Feeley v. Royal, Grimm & Davis          CV-91-526-SD  06/26/95

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


James A. Feeley

    v.                                              Civil No. 91-526-SD

Royal, Grimm & Davis, Inc.;
Jay V. Grimm


O R D E R

In this diversity action, plaintiff James A. Feeley alleges that defendants Jay Grimm and Royal, Grimm & Davis, Inc. (Royal), tortiously interfered with his employment contract with BankEast Corporation.  Presently before the court are defendants' motion for partial summary judgment and plaintiff's objection thereto.[1]  Also before the court is defendants' motion to strike portions of plaintiff's affidavit opposing partial summary judgment, to which plaintiff objects.


Factual Background

Plaintiff alleges that he was retained by BankEast in the

---

[1]In addition, both parties have reiterated their positions on the summary judgment motion by filing responsive memoranda, which the court has reviewed.

summer of 1986 as a consultant for the purpose of facilitating the bank's entry into the discount brokerage industry. In October of that year plaintiff entered into an employment contract with BankEast to work as its president of discount brokerage services. BankEast subsequently acquired Royal, a discount brokerage service which Feeley had previously attempted to purchase himself. Feeley's contract contained, inter alia, a "right of first refusal" clause to purchase Royal from BankEast should it receive a third-party offer for Royal and decide to sell.[2]

Plaintiff alleges that defendant Grimm opposed BankEast's acquisition of Royal, and particularly Feeley's involvement in the acquisition. Second Amended Complaint ¶ 14. Plaintiff

_____

[2]Feeley's contractual right of first refusal states in full,
> 5. BankEast Corporation intends to remain the sole owner of discount brokerage service affiliates.
> A. However, while you are employed by BankEast Corporation, if a legitimate, written purchase offer for the relevant affiliates is received by BankEast Corporation on or before October 31, 1992, you will be offered an opportunity to match that offer within 60 days after its receipt is acknowledged. Action will be taken on your offer before the initial offer and if your offer is rejected, the initial offer will also be rejected.

Employment Agreement ¶ 5 (attached to Affidavit of James A. Feeley as Exhibit A).

further alleges that, after the acquisition, defendants, in order to interfere with plaintiff's employment contract, made derogatory statements about plaintiff to BankEast officers, obstructed plaintiff's access to important records, and withdrew plaintiff's application for necessary regulatory registration. Id. ¶¶ 67-68.

In 1988 BankEast terminated plaintiff's employment contract and sold Royal to defendant Grimm without permitting Feeley to exercise the "right of first refusal" provision contained in his employment contract. This action, in which plaintiff alleges that defendants tortiously interfered with his employment contract, followed.

Discussion

1. Defendants' Motion to Strike Portions of Plaintiff's Affidavit

Defendants seek to strike portions of plaintiff's affidavit in support of his objection to defendants' summary judgment motion on the ground that plaintiff's statements do not comply with Rule 56(e), Fed. R. Civ. P.

Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e), Fed. R. Civ. P.; see also Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 681-82 (1st Cir. 1994). A party moving to strike an affidavit under Rule 56(e) "must specify the objectionable portions of the affidavit and the specific grounds for objection." Casas Office Machs., supra, 42 F.3d at 682 (citing 10A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2738, at 507 (2d ed. 1983)). A court faced with such a motion will, after reviewing the affidavit, "disregard only those portions of an affidavit that are inadmissible and consider the rest of it." Id. (citing Lee v. National Life Assurance Co., 632 F.2d 524 (5th Cir. 1980)).

Here, defendants move to strike paragraphs 7, 9-10, and 12-16 of Feeley's affidavit. The court, having reviewed the full affidavit, defendants' objections to the above-mentioned paragraphs, and plaintiff's response thereto, finds that most of the challenged paragraphs contain at least some admissible evidence and therefore declines to strike the challenged paragraphs from the summary judgment record. However, in evaluating defendants' summary judgment motion, the court will disregard those portions of the challenged paragraphs it finds to be deficient under Rule 56(e).

4

2. Defendants' Motion for Partial Summary Judgment

    a. Summary Judgment Standard

    "Summary judgment is appropriate where the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." VanHaaren v. State Farm Mut. Auto Ins. Co., 989 F.2d 1, 3 (1st Cir. 1993) (citing Rule 56(c), Fed. R. Civ. P.) (other citations omitted). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    b. Tortious Interference with Contractual Relations

    In Counts VI and VIII of his Second Amended Complaint, plaintiff alleges that defendants intentionally and maliciously caused BankEast to breach its employment contract with him and that said breach caused plaintiff damages, including lost contractual benefits and loss of the right to buy Royal. Second Amended Complaint ¶¶ 62-69, 80-91.

    Defendants now seek partial summary judgment for those

portions of Counts VI and VIII which relate to plaintiff's loss of his "right of first refusal" on the ground that plaintiff cannot establish that defendants had knowledge of this position. Plaintiff responds that under New Hampshire law he is not required to prove that defendants had knowledge of a particular contractual right in order to establish tortious interference with the contract.

In New Hampshire, to establish liability for tortious interference with contractual relations, "the plaintiff must show: '(1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference.'" Demetracopoulos v. Wilson, 138 N.H. 371, 373-74, 640 A.2d 279, 281 (1994) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 46, 534 A.2d 706, 709 (1987)).

The focus of the instant motion is the knowledge element of plaintiff's claim. Accordingly, the court limits its discussion herein to the requirements of that element and to the question of whether the evidence presented creates a genuine issue as to whether defendants had the requisite knowledge.

To be subject to liability for tortious interference with contractual relations,

6

> "the actor must have knowledge of the
> contract with which he is interfering and of
> the fact that he is interfering with the
> performance of the contract.  Although the
> actor's conduct is in fact the cause of
> another's failure to perform a contract, the
> actor does not induce or otherwise
> intentionally cause that failure if he has no
> knowledge of the contract."

Tamposi Assocs. v. Star Mkt. Co., 119 N.H. 630, 633, 406 A.2d

132, 135 (1979) (quoting RESTATEMENT (SECOND) OF TORTS § 766, cmt. i

(1979)).  It is not necessary, however, "to prove actual

knowledge; it is enough to show that defendant had knowledge of

facts which, if followed by reasonable inquiry, would have led to

complete disclosure of the contractual relations and rights of

the parties."  45 AM. JUR. 2D Interference § 11 (1969).  See also

8 STUART M. SPEISER, ET AL., THE AMERICAN LAW OF TORTS § 31.52, at 1303

(1991) (defendant's knowledge of the contract "may be actual, or

it may be constructive"); W. PAGE KEETON, ET AL., PROSSER & KEETON ON

TORTS § 129, at 982 (5th ed. 1984) ("Intentional interference

. . . presupposes knowledge of plaintiff's contract or interest,

or at least of facts which would lead a reasonable person to

believe that such interest exists.  Without such knowledge there

can be no intent and no liability . . . .").

Although New Hampshire courts have not specifically

addressed the question of whether a defendant's lack of knowledge

of a specific contractual provision precludes a plaintiff from

7

recovering for tortious interference with contractual relations, the court's review of relevant caselaw and the well-recognized authorities cited herein leads it to conclude that actual or constructive knowledge of the general nature of the contract in question is all that is required to meet the knowledge element of such a claim. However, to the extent that a defendant can show that he had no knowledge of a specific contractual provision, such evidence may affect plaintiff's proof of intent to interfere with the contract or of damages.[3]

Here, the evidence presented indicates that defendant Grimm was aware that Feeley was employed as president of BankEast's discount brokerage services during the time period in question. See Deposition of Jay V. Grimm at 200 (Defendants' Exhibit B; Plaintiff's Exhibit 2); Memorandum from Jay Grimm dated April 1, 1987 (attached to Affidavit of James A. Feeley as Exhibit B). Grimm testified at his deposition about his knowledge of Feeley's employment contract with BankEast as follows:

> Q. But you didn't consider him to have an employment contract?
> A. I had no knowledge of the contract.
> Q. Are you talking about the particular contract that he entered into?

---

[3]The court notes here that it previously determined, in its order of May 28, 1993, that plaintiff has presented sufficient evidence "for a reasonable jury to find that defendants intentionally and improperly interfered with plaintiff's employment contract with BankEast." Order of May 28, 1993, at 8.

A. That's correct. I mean, I know that in the annual report, I believe it was the 1986, his picture appeared and he was named as president of the BankEast discount brokerage division, but I didn't know whether he had--I guess any employment arrangement is a contract, but whether he had a verbal contract, a written contract or some other form of arrangement, whether he was working as a consultant, an employee, I did not know.

Q. Did anyone ever tell you that Mr. Feeley had a first right of refusal--

A. No.

Grimm Deposition at 200-01.

In response to this evidence, Feeley states in his affidavit that

[o]n or about August 4th of 1987 after a Royal Board meeting in Manchester, New Hampshire[,] Grimm asked me "How long is your contract", to which I replied "four years and six years." Grimm then asked for a copy of the contract. I advised that I did not have a copy in my possession at that time but he could obtain a copy from John Snow. The four years referred to my employment contract with BankEast and the six years referred to my "right of first refusal" provision which expired on or about December, 1992. Based on this conversation, and other documentation, I know that Grimm was aware of my contract with BankEast.

Feeley Affidavit ¶ 11.

On the basis of the evidence before it, the court finds that a genuine issue of material fact exists as to whether defendants had knowledge of plaintiff's employment contract in general and as to whether defendants "had knowledge of facts which, if

9

followed by reasonable inquiry, would have led to complete disclosure of the contractual relations and rights of the parties," 45 AM. JUR. 2D *Interference* § 11, including the specific "right of first refusal" clause contained in plaintiff's contract. Accordingly, defendants' motion for partial summary judgment must be and herewith is denied.

<u>Conclusion</u>

For the reasons set forth herein, defendants' motion to strike portions of plaintiff's affidavit (document 67) is denied, and defendants' motion for partial summary judgment (document 63) is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

June 26, 1995

cc:  Robert E. Murphy, Jr., Esq.
     William L. Chapman, Esq.
     Andrew D. Dunn, Esq.

10