United States District Court
District of New Hampshire
No. 81-439

SPHEREX, INC.

v.

ALEXANDER GRANT & COMPANY

October 14, 1982

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*James E. Higgins* on the brief, and *Richard V. Wiebusch* orally), for the plaintiff.

*Orr & Reno P.A.*, of Concord, and *Duane, Morris & Heckscher*, of Philadelphia, Pennsylvania (*George E. Pierce, Jr.*, on the brief and orally), for the defendant.

DOUGLAS, J. This case, certified to us by the United States District Court for the District of New Hampshire (*Loughlin,* J.), requires us to decide an issue of first impression in this State: the extent to which an accountant may be held liable for damages in tort to third parties for negligent misrepresentation in an unaudited financial statement.

The facts certified by the district court are that the defendant, Alexander Grant and Company (Alexander Grant), a partnership with its principal place of business in Philadelphia, contracted to perform accounting services for General Home Products Corporation (GHP) of Pennsauken, New Jersey. GHP engaged Alexander Grant to prepare an unaudited financial statement for the twelve-month period ending December 31, 1977, based on financial information provided by GHP. GHP submitted copies of this statement to the plaintiff, Spherex, Inc. (Spherex), a New Hampshire-based manufacturer of spoked wheels for baby carriages and shopping carts, for the purpose of obtaining credit. Spherex subsequently sustained a financial loss in its dealings with GHP and filed suit in United States District Court alleging: that Alexander Grant either knew that the unaudited financial statement was inaccurate or was negligent in preparing the statement; that Alexander Grant knew GHP would show the statement to Spherex; and, that Spherex detrimentally relied on the statement in extending credit to GHP. Alexander Grant, in defense, contended its potential liability did not extend to a third-party creditor of GHP with whom Alexander Grant was not in privity. Alexander Grant further asserted it is unreasonable, as a matter of law, for a third party to rely upon an unaudited financial statement.

The certified questions are as follows:

"1. Under established New Hampshire choice of law

principles, does Pennsylvania or New Hampshire law apply to the instant action?

If the answer to the above question is that New Hampshire law applies, what is the law of New Hampshire on the following issues:

2. In connection with the claim of negligent misrepresentation by an accounting firm, does New Hampshire law apply the doctrine of privity?

3. Is it unreasonable as a matter of law to rely upon information presented in an unaudited financial statement prepared by the defendant accountant?

4. Is it unreasonable as a matter of law to rely upon an accountant to audit or verify or investigate the substantive accuracy of material or information presented in an unaudited financial statement in connection with a claim against the accountant who prepared it?"

The certified statement of facts does not provide us with sufficient information to answer whether Pennsylvania or this State's substantive law governs the litigation pending in district court. We believe, however, that adequate controlling precedent exists to allow the district court to resolve the conflicts-of-law question presented in this case. Since our opinion sixteen years ago in *Clark v. Clark*, 107 N.H. 351, 222 A.2d 205 (1966), adopting Dean Robert A. Leflar's choice-influencing considerations as this State's conflicts rule of law, we have decided a line of cases refining the analysis set forth in *Clark. See, e.g., Gordon v. Gordon*, 118 N.H. 356, 387 A.2d 339 (1978); *Maguire v. Exeter & Hampton Elec. Co.*, 114 N.H. 589, 325 A.2d 778 (1974); *Gagne v. Berry*, 112 N.H. 125, 290 A.2d 624 (1972); *Taylor v. Bullock*, 111 N.H. 214, 279 A.2d 585 (1971). Our most recent application of that choice-of-law rule occurred within the past few months. *See LaBounty v. American Insurance Company*, 122 N.H. 738, 451 A.2d 161 (1982).

Moreover, the United States District Court, *Dunlap v. Aulson Corp.*, 90 F.R.D. 647 (D.N.H. 1981); *Wentworth v. Kawasaki, Inc.*, 508 F. Supp. 1114 (D.N.H. 1981); *accord, In re Air Crash Disaster at Boston, Mass., July 31, 1973*, 399 F. Supp. 1106 (D. Mass. 1975), as well as the First Circuit, *Barrett v. Foster Grant Co.*, 450 F.2d 1146 (1st Cir. 1971); *Dindo v. Whitney*, 429 F.2d 25 (1st Cir. 1970), have shown little difficulty in applying the *Clark* criteria in determining choice-of-law questions. We therefore proceed directly to decide the substantive law in question should the district court on the facts

conclude that New Hampshire, rather than Pennsylvania, law applies.

▮ It should be noted at the outset that the question before this court is not Alexander Grant's liability to Spherex for intentional misrepresentation, or fraud. *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931), the seminal case on an accountant's liability to third parties, from which Alexander Grant's privity defense stems, distinguished intentional from negligent misrepresentation, and held that an accountant could be liable to a non-client whom he intentionally deceived. Justice Cardozo, writing for the New York Court of Appeals, took note of the defendant accountant's liability in that case to a plaintiff who detrimentally relied on *intentional* material misstatements:

> "The defendants owed to their employer a duty imposed by law to make their certificate without fraud, and a duty growing out of contract to make it with the care and caution proper to their calling. Fraud includes the pretense of knowledge when knowledge there is none. To creditors and investors to whom the employer exhibited the certificate, the defendants owed a like duty to make it without fraud, since there was notice in the circumstances of its making that the employer did not intend to keep it to himself."

*Id.* at 179, 174 N.E. at 444 (citation omitted). In other words, where an accountant or other supplier of information knows that a materially false statement is to be conveyed to some party other than the party to whom it is made, public policy is served by holding the intentional wrongdoer accountable to the one who relies to his detriment on the misstatement of fact.

▮ The considerations are different when the misrepresentation is *negligently* made. "If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Id.* Courts have read this language in *Ultramares* as requiring privity between a defendant accountant and a plaintiff before liability for negligent misrepresentation can attach. Alexander Grant here contends that, assuming Pennsylvania law should determine the outcome of the litigation, controlling precedent requires privity in this negligent misrepresentation action. *See Landell v. Lybrand,* 264 Pa. 406, 408, 107 A. 783, 783 (1919).

Counsel for both parties agree, and our research has revealed no cases to the contrary, that this question is unsettled in New Hampshire. Yet, we have expressed our disfavor for the privity doctrine in personal injury cases. *Lenz v. Company*, 88 N.H. 212, 214, 186 A. 329, 330 (1936). Our reluctance to apply the privity rule has extended to allowing a proper plaintiff to recover for mere financial loss resulting from the negligent performance of services. *Robinson v. Colebrook Savings Bank*, 109 N.H. 382, 384–85, 254 A.2d 837, 839 (1969). The duty that Spherex alleges it was owed by Alexander Grant is not entirely dissimilar to the duty we have held a promisor owes to an intended third-party beneficiary. In *Tamposi Associates v. Star Mkt. Co.*, 119 N.H. 630, 406 A.2d 132 (1979), we said "[a] third-party beneficiary relationship exists if . . . the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract." *Id.* at 633, 406 A.2d at 134. In the instant case, Spherex claims Alexander Grant's duty to produce an unaudited financial statement in a non-negligent manner grew out of Alexander Grant's engagement contract with GHP. Spherex's status as a third-party user of the financial statement prepared by Alexander Grant, if proved at trial, would be akin to an intended third-party beneficiary to whom Alexander Grant owed a duty of due care.

The *Ultramares* holding, and its apparent privity require-ment, has been distinguised primarily on two bases. First, courts have sought to link the privity doctrine with Justice Cardozo's "social utility" rationale of protecting professionals from the specter of unlimited liability to a virtually limitless class of plaintiffs. Thus, judges have not hesitated to permit recovery where the plaintiff's identity was specifically known to the negligent defendant. *See, e.g., Seedkem, Inc. v. Safranek*, 466 F. Supp. 340, 343–44 (D. Neb. 1979); *Coleco Industries, Inc. v. Berman*, 423 F. Supp. 275, 308–10 (E.D. Pa. 1976), *aff'd*, 567 F.2d 569 (3d Cir. 1977), *cert. denied*, 439 U.S. 830 (1978); *White v. Guarante*, 43 N.Y.2d 356, 361–62, 372 N.E.2d 315, 318–19, 401 N.Y.S.2d 474, 477–78 (1977); *Ryan v. Kanne*, 170 N.W.2d 395, 402–03 (Iowa 1969). Beyond that, courts have been less willing to expand the frontier of liability. The question is "whether the defendant has some special reason to anticipate the reliance of the plaintiff." W. PROSSER, LAW OF TORTS 708 (4th ed. 1971).

Second, *Ultramares* has been distinguished as a relic of a bygone economic era. Both the sophistication of modern accounting procedures and the accountant's central role in the financing and investment industry are a far cry from the fledgling profession in

need of judicial protection that existed at the time of *Ultramares.* Note, *Accountants' Liability for Negligence—A Contemporary Approach for a Modern Profession,* 48 FORDHAM L. REV. 401, 407 (1979). One commentator has stated:

> "The accountant today has a role of central responsibility in the business community. . . . This new circumstance, not present when *Ultramares* was decided, makes it clear that 'between the innocent reliant party and the negligent public accountant, the accountant should bear the burden of his negligence.' The accountant then must accept the burdens of legal responsibility that go along with the benefits derived from his important role in the modern business community."

Mess, *Accountants and the Common Law: Liability to Third Parties,* 52 NOTRE DAME LAW, 838, 855–56 (1977) (citation omitted).

The Restatement (Second) of Torts § 552 has sought to harmonize the accountant's contemporary role and his potential liability by holding him accountable to a "person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it . . . ." In effect, an accountant who negligently misrepresents information is held liable not only to known third parties but to an actually foreseeable class of third persons. As comment *a* to section 552 explains, extending an accountant's liability to an intended recipient of information "promotes the important social policy of encouraging the flow of commercial information upon which the operation of the economy rests." RESTATEMENT (SECOND) OF TORTS § 552 comment *a*, at 128 (1976). Furthermore, an accountant, like the manufacturer under products liability law, is in the best position to regulate the effects of his conduct by controlling the degree of care exercised during the performance of his professional duties. The accountant, through the fee structure, can pass along to his clients the cost of insuring against financial loss sustained by them through reliance upon his negligent misstatement of fact. Note, *Accountants' Liability for Negligence—A Contemporary Approach for a Modern Profession,* 48 FORDHAM L. REV. at 413–15.

We believe section 552 of the Restatement represents a reasoned approach to the issue of professional liability for negligent misrepresentation. *Accord, Haddon View Inv. Co. v. Coopers & Lybrand,* 436 N.E.2d 212, 214 (Ohio 1982). It comports with our refusal to protect particular classes of defendants, *Henderson Clay Products, Inc. v. Edgar Wood & Associates, Inc.,* 122 N.H. 800, 802, 451 A.2d 174, 175 (1982); *Carson v. Maurer,* 120 N.H. 925, 935–37,

424 A.2d 825, 833–34 (1980). Our legislature has recognized the unique services performed by an accountant and the need to protect the public from the unregulated practice of accountancy. *See* RSA ch. 309-A (Supp. 1981). Regulation, however, was not intended to be the exclusive mechanism for safeguarding the public interest and for encouraging compliance with generally accepted accounting practices.

■ Nevertheless, we acknowledge that an accountant's potential liability is not boundless. "It is not enough that the maker merely knows of the ever-present possibility of repetition [of information supplied by him] to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." RESTATEMENT (SECOND) OF TORTS § 552 comment *h*, at 133. The plaintiff's relationship to the accountant becomes crucial because

> "the risk of liability to which the supplier subjects himself by undertaking to give the information, while it may not be affected by the identity of the person for whose guidance the information is given, is vitally affected by the number and character of the persons, and particularly the nature and extent of the proposed transaction."

*Id.* Therefore, while an accountant is to employ a sufficient degree of care in the performance of professional activities in order to protect himself from liability, the law must not arbitrarily extend that liability beyond his reasonable expectations as to whom the information will reach. "The risk reasonably to be perceived defines the duty to be obeyed . . . ." *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928). We believe section 552 of the Restatement preserves such reasonable boundaries of liability.

■ We are unable, as a matter of law, to consider it unreasonable for a third party to rely upon information presented in an unaudited financial statement prepared by the defendant accountant, or to rely upon an accountant to verify the substantive accuracy of the information presented in an unaudited financial statement. Of course, whether an accountant was rendering merely a "compilation", rather than a "review", as those terms are commonly understood within the accounting profession, can make a difference as to the scope of service undertaken. It is for Spherex at trial to adduce evidence as to any duty undertaken by the accounting firm in its engagement contract with the client, irrespective of the unaudited nature of the financial statement it prepared. "Their liability must be dependent upon their undertaking, not their rejection of dependability. They cannot escape liability for

negligence by a general statement that they disclaim . . . reliability." *Ryan v. Kanne*, 170 N.W.2d at 404. Moreover, evidence of any express representation actually made by Alexander Grant to Spherex or any understandings existing between them would tend to modify Alexander Grant's duty, if any, towards Spherex, regardless of the fact that the financial statement allegedly relied upon by Spherex was unaudited. *See Seedkem, Inc. v. Safranek*, 466 F. Supp. at 345. The statement of facts certified to this court by the district court provides insufficient information to permit us to conclude, as a matter of law, that Alexander Grant owed Spherex no duty of due care.

*Remanded.*

All concurred.