Rockingham
No. 90-080

ANTHONY G. DEMETRACOPOULOS

v.

DAVID WILSON d/b/a HODGDON & WILSON

March 31, 1994

*Krolikowski & Hobbs*, of Nashua (*James B. Hobbs* on the brief and orally), for the plaintiff.

*Nutter, McClennen & Fish*, of Boston, Massachussetts (*Natalie A. Kanellis* on the brief and orally), for the defendant.

HORTON, J.   The plaintiff, Anthony Demetracopoulos, obtained a jury verdict against the defendant, David Wilson, on claims for intentional interference with contractual relations and professional negligence. On appeal, the defendant contends that certain jury instructions given by the Superior Court (*McHugh*, J.) were improper; that the court erred in permitting the plaintiff to relitigate issues already determined in a prior, related case; and that the court permitted an improper award of damages. We reverse and remand.

The facts underlying this appeal were set forth in a related case, *Demetracopoulos v. Strafford Guidance Center*, 130 N.H. 209, 536 A.2d 189 (1987) (*Demetracopoulos I*), and will be summarized here only as they relate to issues now raised by the defendant. In May

1980, the plaintiff was hired as the business manager for Strafford Guidance Center (SGC), a nonprofit corporation that receives State and federal funding to provide mental health services. The plaintiff reported directly to Bern Anderson, SGC's executive director. In the summer of 1982, allegations surfaced that SGC personnel were engaging in Medicaid fraud. The New Hampshire Attorney General's Office initiated an investigation, and on June 22, 1982, it executed a search warrant at SGC and seized the corporation's medical and financial records.

In response to the attorney general's investigation, SGC took steps to conduct its own inquiry into the alleged wrongdoings at the corporation. In early August, SGC's board of directors (board) voted to retain the defendant, a certified public accountant, to audit SGC's records. On August 24, 1982, the defendant reported his findings to the board. Among the defendant's findings was that on August 2, 1982, the plaintiff and Bern Anderson had executed a three-year personal services contract that contained terms contrary to SGC's personnel policies manual. The contract, which had not been authorized by the board, provided that the plaintiff would receive automatic raises at a rate of five percent per year, would be paid at an elevated salary grade, and would receive eighty percent of the contract's value if he were fired for cause. Upon learning of the contract, the board voted unanimously to dismiss the plaintiff and Anderson. In the first legal dispute arising from the plaintiff's dismissal, the plaintiff sued SGC to enforce the employment contract. This court held that Bern Anderson was without either actual or apparent authority to negotiate the contract, and that the contract was not binding on SGC. *Id.* at 212, 216, 536 A.2d at 191, 193–94.

The plaintiff sued the defendant for intentional interference with contractual relations, professional negligence, and defamation. The claims were based on allegations that the defendant had prepared a report that contained "false," "misleading," "improper," and "incorrect" information concerning the plaintiff. The jury returned a verdict for the defendant on the defamation claim and for the plaintiff on his claims for intentional interference with contractual relations and professional negligence, awarding $73,000 in damages for lost wages, and $77,000 in damages for emotional suffering.

■ On appeal, the defendant first argues that the trial court failed to properly instruct the jury on the law of intentional interference with contractual relations. To establish liability for this tort, the plaintiff must show: "(1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship;

(3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 46, 534 A.2d 706, 709 (1987) (quotation omitted).

In this case, the defendant contends that the trial court prepared a special verdict form that erroneously permitted the jury to hold him liable for intentionally interfering with the plaintiff's employment relationship without finding that the interference was intentional *and* improper. The special verdict form posed the following question:

> "1. Do you, the jury, find, after review of all of the evidence, that the plaintiff has satisfied his burden of proof that it is more probable than not that the defendant intentionally interfered with the employment relationship that the plaintiff had with [SGC] by preparing and publishing to the Board of Directors of [SGC] certain reports that contained false information about the plaintiff or went beyond the scope of what he was hired to do in a manner that adversely affected the employment relationship of the plaintiff with [SGC]?"

■ We find that the special verdict form may have misled the jury by suggesting that it could hold the defendant liable for intentionally interfering with the plaintiff's employment relationship without finding that such interference occurred as a consequence of conduct that was both intentional and improper. To establish that the defendant's conduct was improper, the plaintiff had to "show that the interference with his contractual relations was either desired by the [defendant] or known by him to be a substantially certain result of his conduct." RESTATEMENT (SECOND) OF TORTS § 767 comment d at 32 (1977). The special verdict form indicated that either the submission of a report that contained false information, *or* the submission of a report that exceeded the scope of the defendant's duties, could support a finding of intentional interference. The form did not ask if the jury found that the defendant improperly included any information found to be false. Nor did the special verdict form require that the jury find that the defendant's exceeding the scope of his charged duties was improper.

The plaintiff suggests that the intentional submission of a report containing false information would necessarily be improper. It is true that a fraudulent misrepresentation ordinarily constitutes "a wrongful means of interference and make[s] an interference improper." RESTATEMENT (SECOND) OF TORTS § 767 comment c at 30. A representation is not fraudulent, however, unless "to the knowledge or belief of its utterer, it is false." *Id.* Once again, the special

verdict form did not suggest that the jury had to find that the defendant knew or believed the report contained false information. The jury thus might have interpreted the form to mean that the defendant could be found liable if he intentionally prepared a report that contained false information, regardless of whether the plaintiff established that the defendant knew of the report's inaccuracies. We therefore reverse the jury's finding of liability on this count and remand for further proceedings consistent with this opinion.

█ The defendant also contends that he could not be liable for professional negligence because, he says, he owed no duty to the plaintiff. In support of this argument, the defendant relies on *Spherex, Inc. v. Alexander Grant & Co.*, 122 N.H. 898, 451 A.2d 1308 (1982), where we adopted the position of the RESTATEMENT (SECOND) OF TORTS in regard to an accountant's liability for negligent misrepresentation. *Spherex*, 122 N.H. at 904, 451 A.2d at 1312. Under the RESTATEMENT, an accountant's liability for negligence is limited to loss suffered by a "person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it." RESTATEMENT (SECOND) OF TORTS § 552(2)(a) at 127. An accountant's liability, however, is not without limit. "[T]he law must not arbitrarily extend that liability beyond [the accountant's] reasonable expectations as to whom the information will reach." *Spherex*, 122 N.H. at 905, 451 A.2d at 1312. Accordingly, the plaintiffs to whom an accountant may be held liable for professional negligence must be "within the class of persons who could have reasonably relied on the accountant['s] work product." *Morvay v. Hanover Ins. Cos.*, 127 N.H. 723, 726, 506 A.2d 333, 335 (1986).

█ In this case, we hold that Mr. Demetracopoulos was not a foreseeable plaintiff. The defendant's report was prepared for SGC's board and was not intended for the plaintiff's "benefit and guidance." RESTATEMENT (SECOND) OF TORTS § 552(2)(a) at 127. In addition, the plaintiff did not rely or act upon the report. Accordingly, we reverse the jury's verdict in favor of the plaintiff on this claim.

While we reverse both verdicts, we nonetheless address those remaining issues, adequately briefed by the parties, that could arise in the retrial of the plaintiff's intentional interference claim.

The defendant argues that the trial court erred by not giving preclusive effect to issues actually litigated and determined in *Demetracopoulos I*. Specifically, he contends that a jury instruction which permitted the plaintiff to relitigate the validity of the plain-

tiff's employment contract violated the doctrine of collateral estoppel. "[T]he doctrine of collateral estoppel bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact actually litigated and determined in the prior action." *Daigle v. City of Portsmouth*, 129 N.H. 561, 571, 534 A.2d 689, 693 (1987).

In light of our prior holding in *Demetracopoulos I* that the plaintiff's employment contract was not binding on SGC, the defendant requested a jury instruction that (1) he could not be found liable if the plaintiff was fired due to the contract, and (2) the jury must accept as true any previously adjudicated issues of fact. When he instructed the jury on issues relating to the plaintiff's intentional interference claim, the trial judge stated:

> "[The] contract has been held to be void and unenforceable, and no award of damages can be made by [*sic*] the plaintiff under the terms of that contract. . . . The reasons why the contract [was] held to be unenforceable are not important with respect to you doing your job. You must just take it from me that the contract is unenforceable and not discuss any reasons why."

■■ The defendant first argues that the instruction failed to correctly apply principles of collateral estoppel. We disagree. The trial court sufficiently acknowledged the preclusive effect of *Demetracopoulos I* when it instructed the jurors that they could not base an award of damages on the plaintiff's employment contract, which had earlier been held unenforceable. The defendant further argues that he was prejudiced when the trial court stated that the reasons why the contract was unenforceable were irrelevant. According to the defendant, this statement prevented him from raising one of his main defenses; namely, that SGC fired the plaintiff because of issues surrounding the making of the unenforceable contract. As we have already remanded for retrial the plaintiff's claim for intentional interference with contractual relations, we need not decide whether the jury could have interpreted the trial court's instruction to the prejudice of the defendant. We emphasize, however, that the doctrine of collateral estoppel in no way limits the defenses available to the defendant, who was not a party to *Demetracopoulos I*. On retrial of the plaintiff's intentional interference claim, the preclusive effect of *Demetracopoulos I* should not restrict the defendant in his attempt to assert that the plaintiff's alleged misconduct resulted in the plaintiff's dismissal.

■ The defendant challenges the award of damages for emotional distress on the following grounds: (1) that the plaintiff's claims sound in misrepresentation and contract, both of which preclude emotional distress damages; (2) that the plaintiff did not introduce expert testimony to establish emotional distress; and (3) that emotional distress damages are barred in this case by the doctrine of foreseeability. We have dismissed the plaintiff's claim for professional negligence, and damages recoverable on a claim for intentional interference with contractual relations include "emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference." RESTATEMENT (SECOND) OF TORTS § 774A(1)(c) at 55. On remand, the plaintiff must satisfy his burden of proving that he incurred the damages alleged, and that the harm was a reasonably expected result of the defendant's conduct. We do not address the issue of the need for expert testimony to establish the fact of emotional distress or its causal connection in an intentional interference action. This issue has not been briefed adequately in this proceeding.

The defendant next argues that the trial court failed to instruct the jury that he could not be held liable for intentional interference with contractual relations unless the jury found that the defendant's conduct was the proximate cause of the plaintiff's injuries. A defendant's conduct is a proximate cause of an individual's injury if it is "a substantial factor in bringing about the harm." *Pillsbury-Flood v. Portsmouth Hospital*, 128 N.H. 299, 304, 512 A.2d 1126, 1129 (1986); *see also* W. KEETON ET AL., PROSSER & KEETON ON TORTS § 41, at 263, 268 (5th ed. 1984); *cf. Tamposi Associates v. Star Market Co.*, 119 N.H. 630, 633, 406 A.2d 132, 135 (1979).

■ In instructing the jury on the plaintiff's intentional interference claim, the trial court stated:

> "[T]he plaintiff must prove that he has suffered damages as a direct result of the interference by the defendant. Therefore, if you find that the employment relationship was broken by [SGC] for reasons completely unrelated to the involvement of the defendant, the plaintiff has not sustained his burden of proof on this claim."

This instruction does not require that the jury consider whether the defendant's conduct was a "substantial factor" in bringing about the harm to the plaintiff. Nor does it specifically explain causation. Nonetheless, the special verdict form did inquire whether "the reports and oral statements prepared and published by the defendant

to [SGC's] Board of Directors referring to the plaintiff caused or were a substantial factor in bringing about the injuries claimed." The special question, taken with the oral instructions, was adequate and did not mislead the jury. *See Johnston v. Lynch*, 133 N.H. 79, 90, 574 A.2d 934, 941 (1990). On remand, however, the trial court should clarify that the defendant cannot be found liable unless his improper conduct was a substantial factor in bringing about harm to the plaintiff.

*Reversed and remanded.*

All concurred.