Loenco v. Londonderry, et al.          CV-95-455-M    02/02/98

UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Loenco, Inc.,
      Plaintiff

      v.                                    Civil No. 95-455-M

Town of Londonderry,
Board of Sewer Commissioners,
Hoyle, Tanner & Associates, Inc.,
and Pace Industries, Inc.,
      Defendants



                          **O R D E R**

      This dispute arises out of the construction of the

Charleston Avenue Wastewater Pumping Station in Londonderry, New

Hampshire.  In 1992, the Town of Londonderry contracted with

Hoyle, Tanner & Associates, Inc. ("HTA") to design the station

and monitor its construction.  The Town then contracted with

plaintiff, Loenco, Inc., to act as the general contractor.  When

the project was not completed on schedule, HTA recommended that

plaintiff be terminated.  The Town accepted that recommendation,

terminated Loenco, and hired a third party to complete

construction of the station.


      In this civil action, Loenco seeks damages from both the

Town and HTA, which it claims to have suffered as a direct result

of having been wrongfully terminated from the project.  HTA has

moved for summary judgment with regard to all claims against it.

In support of it's asserted entitlement to judgment as a matter

of law, HTA says that: (1) Loenco seeks only economic damages,

which are not available under New Hampshire's law of negligence; (2) as the project engineer, HTA is entitled to quasi-judicial immunity from liability as to Loenco's claims; and (3) Loenco's third-party beneficiary claim fails as a matter of law because Loenco was not an intended beneficiary of HTA's contract with the Town.

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling upon a party's motion for summary judgment, the court must, "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party carries its burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991). See also Fed. R. Civ. P. 56(e). That burden is discharged only if the cited disagreement

2

relates to a genuine issue of material fact.  <u>Wynne v. Tufts University School of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992). "Generally speaking, a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  <u>Intern'l Assoc'n of Machinists and Aerospace Workers v. Winship Green Nursing Center</u>, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Discussion**

I.   <u>Negligence Claims and Economic Loss</u>.

In count 7 of its amended complaint, Loenco alleges that HTA, "by virtue of its contract with [the Town], owed plaintiff a duty of reasonable care under all the circumstances."  Complaint, para. 63.  Loenco claims HTA "breached this duty of care by negligently and carelessly providing and allowing for incorrect information for the job specifications which plaintiff reasonably relied on to plaintiff's detriment."  Complaint, para. 64.  As damages, Loenco seeks compensation for lost earnings, income, profits, reputation, and goodwill.  HTA has moved for summary judgment on count 7, arguing that New Hampshire common law does not permit a party to recover purely "economic losses" under a tort theory.

Under New Hampshire law, economic damages are not ordinarily available in a negligence case.  <u>See Border Brook Terrace Condo.</u>

3

<u>Assoc. v. Gladstone</u>, 137 N.H. 11, 18 (1993).  New Hampshire does, however, recognize an exception to that general rule when professionals supply erroneous information, causing reasonably foreseeable injury to a third party.  As this court previously noted:

> In determining a professional's duty of care to a third party not in privity of contract, New Hampshire has adopted the position of the Restatement (Second) of Torts.  <u>See Simpson v. Calivas</u>, 139 N.H. 1, 5 (1994); <u>Morvay v. Hanover Ins. Co.</u>, 127 N.H. 723, 724 (1986); <u>Spherex, Inc. v. Alexander Grant & Co.</u>, 122 N.H. 898, 903 (1982).  Under the Restatement, professionals who supply defective information for the guidance of others in their business transactions are liable for reasonably foreseeable pecuniary loss caused by that dissemination.  Restatement (Second) of Torts § 552(1).  However, a professional's liability for negligence is limited to losses suffered by a "person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or <u>knows that the recipient intends to supply it</u>."  Restatement (Second) of Torts § 552(2)(a) (emphasis added).  The critical factor in determining liability is the relationship of the professional to the third party.  <u>Demetracopoulos v. Wilson</u>, 138 N.H. 371, 375 (1994); <u>Spherex</u>, 122 N.H. at 905.

<u>Loenco v. Town of Londonderry</u>, No. 95-455-M, slip op. at 7-8 (D.N.H. September 27, 1996).

So, for example, in <u>Spherex</u> the New Hampshire Supreme Court held that an accounting firm could be held liable to a third party which relied to its detriment upon an unaudited financial statement which the accounting firm had prepared for one of its clients.  Noting that it has traditionally been reluctant to apply the privity rule to bar a proper plaintiff from recovering

4

for financial losses resulting from the negligent performance of services, the court concluded that an accountant could be liable "not only to known third parties but to an actually foreseeable class of third persons." Id., at 904. The key to imposing any such liability (in the absence of contractual privity) is foreseeability: a professional supplier of information will be liable to third parties whom it might reasonably foresee as likely to rely upon the information it supplies. Id., at 904-05.

Here, the relationship between Loenco and HTA is much like the relationship between the parties in Spherex. Like the accounting firm, which could reasonably foresee that the financial statement it prepared would be relied upon by identifiable third parties, HTA could reasonably foresee that third parties, particularly the Town's contractors and subcontractors, would necessarily rely upon the accuracy of plans and specifications it provided to the Town for use in constructing the station. Ultimately, holding HTA liable for losses caused by false or inaccurate information contained in the project's plans and specifications is consistent with prior New Hampshire case law, the Restatement (Second) of Torts § 552, and the decisions of many other courts which have addressed this issue. See, e.g., Guardian Construction Co. v. Tetra Tech Richardson, Inc., 583 A.2d 1378, 1386 (Del. Super. Ct. 1990) ("Modern legal authority supports the proposition that if, in the

5

course of its business, TTR [the project engineer] negligently obtained and communicated incorrect information specifically known and intended to be for the guidance of Plaintiffs, and if it is specifically known and intended that Plaintiffs would rely in calculating their project bids on that information, then TTR should be liable for foreseeable economic losses sustained by Plaintiffs regardless of whether privity of contract exists"); Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 320 S.C. 49, 56, 463 S.E.2d 85, 89 (S.C. 1995) ("In the case sub judice, Engineer designed the project specifically for the County of Charleston. Engineer supervised the construction. Engineer had the right, among other rights, to inspect the construction and to halt construction. Under these facts, Engineer owed a duty to the contractor not to negligently design or negligently supervise the project"); Davidson and Jones, Inc. v. County of Hanover, 41 N.C. App. 661, 667, 255 S.E.2d 580, 584 (N.C. Ct. App. 1979) ("an architect in the absence of privity of contract may be sued by a general contractor or the subcontractors working on a construction project for economic loss foreseeably resulting from breach of an architect's common law duty of due care in the performance of his contract with the owner"). See also John Martin Company, Inc. v. Mores/Diesel, Inc., 819 S.W.2d 428 (Tenn. 1991); A. R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973); Donnelly Construction Co. v. Oberg/Hunt/Gilleland, 139 Ariz. 184, 677 P.2d 1292 (Ariz. 1984). See generally J.M. Feinman, Economic Negligence in

6

Construction Litigation, 15-AUG Construction Law 34, 34-35 (1995) ("Most courts have extended liability to design professionals by bringing this area within the ordinary law of negligence. In all of the elements of the design professional's role -- design, supervision, and evaluation -- failure to observe a reasonable standard of care may foreseeably cause economic harm to another participant in the construction process or to a user of the property. When that occurs, the design professional ordinarily is held liable for the economic consequences of its negligence").

HTA has not shown that it is entitled to judgment as a matter of New Hampshire law with regard to count 7. Accordingly, its motion for summary judgment on count 7 is denied.

II. Intentional Interference with Contractual Relations.

In count 4 of its amended complaint, Loenco claims that HTA "improperly and unlawfully interfered with Plaintiff's rights under the Contract by intentionally inducing, persuading and coercing the Town to breach and or terminate its Contract with the Plaintiff." HTA claims that it is entitled to judgment as a matter of law on count 4 because its recommendations to the Town were made within the scope of its employment by the Town and, therefore, were neither unjustified nor actionable. Moreover, as the project engineer and agent of the Town, HTA claims that it is shielded from liability by a "design professional" or "quasi-

judicial" privilege that entitles it to give the owner privileged advice which may lead to the termination of a contractor.

The New Hampshire Supreme Court has held that there are four distinct elements to the tort of intentional interference with contractual relations:

> (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant <u>intentionally</u> and <u>improperly</u> interfered with this relationship; and (4) the plaintiff was damaged by such interference.

<u>Jay Edwards, Inc. v. Baker</u>, 130 N.H. 41, 46 (1987) (emphasis in original)(citation and quotation marks omitted). Plainly, not all interferences with contractual relations are tortious. To be actionable, the defendant's interference with the plaintiff's contractual rights must be either unjustified or otherwise "improper."

Here, there is a genuine and material factual dispute concerning HTA's conduct, and whether its recommendation to the Town to terminate Loenco was "improper." Loenco alleges that HTA acted arbitrarily and in bad faith. HTA denies any such improper conduct or untoward motives. Nevertheless, the existence of that factual dispute precludes the entry of summary judgment in favor of HTA on count 4 of the amended complaint.

Moreover, the court cannot conclude, as a matter of law, that HTA is entitled to "quasi-judicial" immunity from Loenco's claims in count 4. To be sure, some courts have recognized a design professional's immunity from liability when his or her allegedly wrongful conduct arises from decisions made in the course of arbitrating disputes between owners and contractors. For example, the Supreme Court of Nebraska recently held:

> We have not previously addressed whether there is any privilege afforded design professionals; however, other courts have done so. Those courts have held that design professionals acting within the scope of their contractual obligations to the owner cannot be liable for advising the owner to terminate a relationship with the contractor, unless the design professionals act in bad faith or with malice.
>
> We hold that design professionals acting within the scope of their contractual obligations are privileged to give the owner advice which may lead to the termination of a contractor. <u>Absent a showing of bad faith or malice</u>, a design professional's intentional, but justified, act of interference will not subject it to liability for tortious interference with business.

<u>Wiekhorst Bros. Excavating & Equip. Co. v. Ludewig</u>, 247 Neb. 547, 557, 529 N.W.2d 33, 40 (1995) (emphasis supplied). <u>See also</u> <u>Lundgren v. Freeman</u>, 307 F.2d 104 (9th Cir. 1962); <u>Craviolini v. Scholer & Fuller Associated Architects</u>, 89 Ariz. 24, 357 P.2d 611 (1960). <u>See generally</u> R. Cushman & G Hedemann, <u>Architect and Engineer Liability: Claims Against Design Professionals</u>, ("Architect & Engineer Liability") § 18.5 at 446-49 (Wiley Law Pubs. 2d ed. 1995).

Although New Hampshire has yet to recognize such a privilege for design professionals, even if it had, in the context of a claim for intentional interference with contractual relations, that privilege would protect a design professional from liability only to the extent its conduct in recommending termination of the contractor was not "improper." See Jay Edwards, Inc., supra. If, on the other hand, the design professional acted in bad faith or with malice, he or she would still be subject to liability.

In this case, Loenco asserts (or can reasonably be viewed as asserting) that HTA acted in bad faith when it recommended that the Town terminate Loenco's contract. See Amended Complaint at para. 46; Loenco's memorandum in opposition to summary judgment at 15 (noting that HTA recommended termination despite the fact that it advised the Town that issuance of a Certificate of Substantial Completion was warranted and Loenco needed only to complete two or three "paperwork type items"); Exhibits 14 and 15 to plaintiff's memorandum. Although HTA denies that it acted in bad faith, a jury, and not the court, must resolve that factual dispute. Again, the existence of a genuine issue of material fact precludes the entry of summary judgment in favor of HTA.

III. Third Party Beneficiary Claims.

Finally, HTA claims that it is entitled to judgment as a matter of law with regard to Loenco's third party beneficiary

10

claims, as alleged in count 5 of the amended complaint. New Hampshire law provides that:

> [a] third-party beneficiary relationship exists if (1) the contract calls for a performance by the promisor which will satisfy some obligation owed by the promisee to the third party, or (2) the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract.

Tamposi Associates, Inc. v. Star Market Co., Inc., 119 N.H. 630, 633 (1979). Loenco does not fall into the first of the two categories identified by the New Hampshire Supreme Court; plainly, the language of the contracts between HTA and the Town does not call for any performance by HTA which will satisfy some obligation owed by the Town to Loenco. Loenco does, however, claim that the contracts between HTA and the Town were drafted in such a way as to give HTA notice that the Town intended Loenco to benefit from that contract. The court disagrees.

As a number of commentators have noted, courts typically interpret construction contracts between owners and design professionals so as to preclude recovery by contractors (and subcontractors) on third-party beneficiary theories.

> In most cases, the courts have been unwilling to find that a contractor is an intended third-party beneficiary of a contract between a design professional and an owner. Generally, the courts conclude that the benefits of the contract between the design professional and the owner are intended only for the parties to the contract. Hence, the contractor is only an incidental and not an intended beneficiary of the contract.

11

Architect & Engineer Liability, § 6.3 at 107. Accord K. Michael,

Design Professional Liability, 14-AUG Construction Law 8, 9

(August, 1994). See generally Restatement (Second) of Contracts

§ 302 (1981) (distinguishing between an "intended beneficiary,"

who acquires certain rights by virtue of the contract, from an

"incidental beneficiary," who does not).

The contracts at issue in this case lack any explicit

disclaimers of intent to benefit third parties.[1] Nevertheless,

they still compel the conclusion that Loenco was, at best, merely

an incidental beneficiary of those contracts. Notwithstanding

Loenco's arguments to the contrary, the court concludes, as a

matter of law, that Loenco is not a third-party beneficiary of

the contracts between HTA and the Town. "The mere fact that the

plaintiff was due to receive a pecuniary benefit . . . through

performance of the contract does not give it a remedy for breach

of contract." Numerica Savings Bank v. Mountain Lodge Inn, 134

N.H. 505, 512 (1991) (quoting Arlington Trust Co. v. Estate of

Wood, 123 N.H. 765, 768 (1983)). Plainly, more is required.

Loenco has failed to identify any language in either contract

which might reasonably support the conclusion that HTA and the

---

[1] Because express disclaimers of intent to create third party beneficiaries are normally dispositive of third-party beneficiary claims, the American Institute of Architects has provided express language that bars third-party beneficiaries in its standard owner and architect agreement. Design Professional Liability, at 9. However, such language was not employed in the contracts at issue in this case.

Town specifically intended to make it a third-party beneficiary of those contracts.

## Conclusion

For the foregoing reasons, HTA's motion for summary judgment (document no. 47) is granted in part and denied in part.  HTA is granted judgment as a matter of law on count 5 of plaintiff's amended complaint (third-party beneficiary claims).  Its motion for summary judgment as to counts 4 and 7 is, however, denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 2, 1998

cc:  Martha E. Howe, Esq.
     Andrew W. Serell, Esq.
     Jeffrey L. Alitz, Esq.

13