Hooksett District Court
No. 2005-912

PLOURDE SAND & GRAVEL CO.

v.

JGI EASTERN, INC. f/k/a *JAWORSKI GEOTECH*, INC.

Argued: October 18, 2006
Opinion Issued: February 16, 2007

*Hall, Morse, Anderson, Miller & Spinella, P.C.*, of Concord (*Frank P. Spinella, Jr.* on the brief and orally), for the plaintiff.

*Donovan Hatem LLP*, of Boston, Massachusetts (*Jeffrey L. Alitz* and *Adam M. Nee* on the brief, and *Mr. Alitz* orally), for the defendant.

HICKS, J. The plaintiff, Plourde Sand & Gravel Co., appeals the decision of the Hooksett District Court (*LaPointe*, J.) dismissing its writ. We affirm.

The plaintiff's writ alleges the following facts. Hiltz Construction, Inc. (Hiltz), a subcontractor for a private construction project in Pembroke,

hired the plaintiff to supply gravel for purposes of constructing the base for a roadway. After the plaintiff supplied the gravel, Keach Nordstrom & Associates (Keach), engineers hired by the Town of Pembroke, hired the defendant, JGI Eastern, Inc., to test the gravel to determine whether it met town specifications. The defendant tested the gravel, and reported to Keach that it contained "insufficient stone content and excessive fines." As a result, Hiltz required the plaintiff to remove and replace the gravel at its own expense with material that met town specifications. After doing so, the plaintiff tested the gravel and found that it did in fact meet town specifications.

The plaintiff sued the defendant in tort. Specifically, the plaintiff claimed:

> that defendant's negligence foreseeably injured plaintiff in that defendant knew or should have known that the town's engineer would rely upon results provided by defendant and would, if those results showed that applicable tests were not passed, require removal of the roadway and replacement of the base materials; that defendant's negligence was a proximate cause of the harm to plaintiff, who is entitled to recover same [*sic*].

The defendant moved to dismiss, arguing that the damages sought are purely economic losses which are not recoverable in tort. Recognizing that it was undisputed that the plaintiff's writ alleged only economic loss damages and that there was no contractual privity between the plaintiff and the defendant, the court granted the defendant's motion to dismiss.

The plaintiff appeals, arguing: (1) the economic loss doctrine does not apply since there is no contractual privity with the defendant; or (2) section 552 of the RESTATEMENT (SECOND) OF TORTS affords an exception to the economic loss doctrine, permitting recovery because the defendant made a negligent misrepresentation. The defendant responds that the negligent misrepresentation exception is not properly before us because it was not pled in the plaintiff's writ and was not raised in the notice of appeal.

> In reviewing the trial court's grant of a motion to dismiss, our task is to ascertain whether the allegations pleaded in the plaintiff's writ are reasonably susceptible of a construction that would permit recovery. We assume all facts pleaded in the plaintiff's writ are true, and we construe all reasonable inferences drawn from those facts in the plaintiff's favor. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law.

*Berry v. Watchtower Bible & Tract Soc.*, 152 N.H. 407, 410 (2005) (quotations and citations omitted).

*I. The Economic Loss Doctrine*

The economic loss doctrine is a common law rule that emerged with the advent of products liability. *Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1172 (D.N.M. 2006). While some states generally limit its application to products liability cases, *Moransais v. Heathman*, 744 So. 2d 973, 983 (Fla. 1999), many other states, including New Hampshire, have expanded its application to other tort cases. *Lempke v. Dagenais*, 130 N.H. 782, 792 (1988); *Farmers Alliance*, 452 F. Supp. 2d at 1172-73.

■ The doctrine is a "judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 241 (Wis. 2004).

> The economic loss doctrine is based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic loss in the commercial arena. If a contracting party is permitted to sue in tort when a transaction does not work out as expected, that party is in effect rewriting the agreement to obtain a benefit that was not part of the bargain.

*Id.* at 242 (quotations, citation and brackets omitted). Thus, where a plaintiff may recover economic loss under a contract, generally a cause of action in tort for purely economic loss will not lie. *Cf. Ellis v. Robert C. Morris, Inc.*, 128 N.H. 358, 363 (1986), *overruled on other grounds by Lempke*, 130 N.H. 782.

However, where a duty that lies outside the terms of the contract is owed, many states allow a plaintiff to recover economic loss in tort against the defendant contracting party. *Ellis*, 128 N.H. at 363; *see also Griffin Plumbing & Heating v. Jordan*, 463 S.E.2d 85, 88 (S.C. 1995); *Congregation of the Passion v. Touche Ross*, 636 N.E.2d 503, 514 (Ill.), *cert. denied*, 513 U.S. 947 (1994). "[W]hen an independent duty exists, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Farmers Alliance*, 452 F. Supp. 2d at 1174 (quotations omitted). In such a case, there is privity among the parties, yet an independent duty in tort owed by the defendant.

The analysis becomes more complicated in claims between a plaintiff and a defendant who have no contractual relationship and hence no privity between them. A few courts hold that since the principle behind the economic loss doctrine is to prevent tort law's unreasonable interference with principles of contract law, the economic loss doctrine does not apply where there is no contractual relationship, and thus no privity between the parties. *See Trinity Lutheran v. Dorschner Excavating*, 710 N.W.2d 680, 683 (Wis. Ct. App. 2006); *Indemnity Ins. Co. v. American Aviation*, 891 So. 2d 532, 534 (Fla. 2004).

Many courts, however, have expanded the economic loss doctrine to bar economic recovery in tort cases where there is no contract and thus no privity. *See, e.g., Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986) ("A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract."). The policy behind this principle is to prevent potentially limitless liability for economic losses: "[While] [t]he physical consequences of negligence usually have been limited, . . . the indirect economic repercussions of negligence may be far wider, indeed virtually open-ended." 4 F. HARPER ET AL., THE LAW OF TORTS § 25.18A at 623 (2d ed. 1986).

Other courts recognize exceptions to this rule, and permit economic loss recovery in tort despite the lack of privity where there is: (1) a "special relationship" between the plaintiff and the defendant that creates a duty owed by the defendant, *Griffin*, 463 S.E.2d at 87; or (2) a negligent misrepresentation made by a defendant who is in the business of supplying information. RESTATEMENT (SECOND) OF TORTS § 552(1), at 126 (1976) ("Information Negligently Supplied for the Guidance of Others").

The plaintiff argues that we should follow the contractual relationship analysis and decline to apply the economic loss rule because the plaintiff is not in privity with the defendant and therefore cannot recover its economic loss in an action for breach of contract. We have never applied this principle before and decline to do so here.

■ In New Hampshire, the general rule is that "persons must refrain from causing personal injury and property damage to third parties, but no corresponding tort duty exists with respect to economic loss." *Ellis*, 128 N.H. at 364; *see also Border Brook Terrace Condo. Assoc. v. Gladstone*, 137 N.H. 11, 18 (1993) ("[A] plaintiff may not ordinarily recover in a negligence claim for purely 'economic loss.'").

■ However, we recognize that a cause of action in tort for economic damages may be maintained under the "special relationship" or negligent

misrepresentation exceptions to the privity rule. *Spherex, Inc. v. Alexander Grant & Co.*, 122 N.H. 898, 903 (1982) ("Our reluctance to apply the privity rule has extended to allowing a proper plaintiff to recover for mere financial loss resulting from the negligent performance of services."). However, if the plaintiff cannot establish at least one of these exceptions, its claim for economic loss is barred.

*A. Special Relationship Exception*

"[A] growing number of states have refused to apply the 'economic loss' rule to actions against design professionals when there is a 'special relationship' between the design professional and the contractor." *Griffin*, 463 S.E.2d at 87. This is sometimes referred to as the "professional negligence" exception. 4 S. SPEISER ET AL., THE AMERICAN LAW OF TORTS § 15:117, at 856-57 (1987).

Such a relationship is different from that required in a traditional negligence claim, since the plaintiff in tort is alleging economic loss, a recovery that is traditionally allowed only in contract. We have likened the duty owed in such a relationship to that owed by a promisor to an intended third-party beneficiary: "[A] third-party beneficiary relationship exists if the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract." *Spherex*, 122 N.H. at 903 (quotation and ellipsis omitted). Whether such a duty exists must be determined on a case by case basis.

In *Robinson v. Colebrook Savings Bank*, 109 N.H. 382 (1969), we held that a beneficiary may bring a negligence action for financial loss against a bank which failed to establish a survivorship account at the request of the depositor. We adopted the exception to the privity requirement because:

> [A] relation created by contract may impose a duty to exercise care. In general, the scope of such a duty is limited to those in privity of contract with each other. However[,] considerations of public policy have prompted the recognition of exceptions to this rule, as where the . . . risk to persons not in privity is apparent.

*Id.* at 384-85 (citation omitted). We have applied this principle to attorneys, *Simpson v. Calivas*, 139 N.H. 1, 4-5 (1994) ("an attorney who drafts a testator's will owes a duty of reasonable care to intended beneficiaries"), and insurance investigators, *Morvay v. Hanover Ins. Cos.*, 127 N.H. 723, 726 (1986) ("investigators owe a duty to the insured as well as to the insurer").

These cases hinge upon the presence of an independent duty owed to the plaintiff because of the nature of the "special relationship" with the

defendant. They are narrow exceptions to the rule and properly so. We have declined to extend the special relationship principle beyond the circumstances in the above-cited cases. Indeed, in *MacMillan v. Scheffy*, 147 N.H. 362, 364 (2001), we limited the liability for economic loss placed upon attorneys: "[F]or a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." (Quotation omitted.) *See also Sisson v. Jankowski*, 148 N.H. 503, 509 (2002) (declining to impose liability on attorney where plaintiff claimed attorney was negligent in failing to execute the will before testator's death).

Further, we have declined several times to extend this principle into the construction arena to permit economic loss recovery against contractors. *Ellis*, 128 N.H. at 366 (finding subsequent purchasers of a home may not maintain an action in tort for damages to their home against the original builder). In *Lempke*, we permitted the subsequent purchasers' claim for economic loss against the defendant builder on an implied warranty theory, but held that "[t]he policy arguments relied upon in *Ellis* for precluding tort recovery for economic loss . . . remain controlling on the negligence claim." *Lempke*, 130 N.H. at 784; *see also Border Brook*, 137 N.H. at 18 (no recovery in negligence for economic loss against corporate owners of condominium complex).

■ Here, the relationship of the parties and the facts before the trial court differ dramatically from any case that has heretofore warranted application of an exception to the privity requirement for economic loss recovery. For example, there is a distinct and articulable relationship between an attorney and a will beneficiary or an insurance investigator and the insured. In those cases, it is reasonable to allow the plaintiff to recover economic losses against the defendant who, although hired by another party, can reasonably foresee the effect his negligence will have on the third party. In contrast, there is no "special relationship" between the parties in this case; indeed, there is no relationship at all.

The defendant was hired by Keach, the engineer hired by the town to ensure the private project complied with town specifications. The plaintiff was hired by Hiltz, who in turn was hired by the general contractor. We reject the plaintiff's invitation to impose a duty on the defendant in such a situation. Were we to do so, there is no principled limit to liability. *See Ultramares Corporation v. Touche*, 174 N.E. 441, 444 (N.Y. 1931) (expressing concern that liability could be extended to "an indeterminate amount for an indeterminate time to an indeterminate class").

Moreover, permitting economic loss recovery in tort here would blur the distinction between contract and tort law. The plaintiff is essentially alleging that the defendant negligently performed its duties under its contract with another party and that as a result, the plaintiff has lost the benefit of its bargain with Hiltz. *See* Feinman, *The Economic Loss Rule and Private Ordering*, 48 ARIZ. L. REV. 813, 814 (2006) ("[Where] the defendant and its partner have allocated the risks and benefits of performance in their contract, . . . the court upsets that allocation when it imposes [tort] liability on the defendant."). This principle was the basis for denying tort liability in *Anderson*. In that case, Anderson, a subcontractor for a project in which Ledbetter was the contractor, filed suit against Walther, who was hired by Ledbetter in part to inspect Anderson's electrical work. *Anderson*, 503 N.E.2d at 246-47. Walther failed to inspect the work, but reported that the work was improperly done, resulting in Ledbetter requiring Anderson to redo the work at a loss to Anderson. *Id.* at 247. Anderson sued Walther in negligence, seeking recovery for economic damages. *Id.* The court affirmed the dismissal of Anderson's claim because Anderson sought "purely economic losses due to defeated expectations of a commercial bargain," which is not recoverable in tort. *Id.* at 249. In a special concurrence, one Justice emphasized the importance of relying on contract law to resolve such disputes:

> [A]ny expectations Anderson may have had with regard to Walther's inspections are rooted in its contract with Ledbetter, and it follows that both the scope of legally protected expectations and any remedies for the disappointment of those expectations must also find their roots in Anderson's commercial agreement . . . . Moreover, allowing Anderson to proceed in tort might subject Walther to a higher standard of care and greater potential liability than Walther had intended to undertake when it entered into its contractual relationship with Ledbetter.

*Id.* at 250-51 (Simon, J., concurring specially).

■ We apply the same principle here. As in *Anderson*, the plaintiff's expectations are rooted in its contract with Hiltz. The economic loss the plaintiff suffered in removing and replacing the gravel arose "solely from disappointed commercial expectations" in that the plaintiff "lost the anticipated profits of its contract" with Hiltz. *Id.* at 249. Imposing a tort duty upon the defendant in this case would disrupt the contractual relationships between and among the various parties. This we are unwilling to do. Accordingly, we find no "special relationship" between the

plaintiff and the defendant such that the defendant owed to the plaintiff an independent duty in tort to prevent economic loss.

### B. Negligent Misrepresentation Exception

The defendant argues that the negligent misrepresentation claim is not properly before this court because it was not pled in the plaintiff's writ and was not raised in the notice of appeal. We disagree.

The plaintiff's writ alleges that the defendant negligently inspected the gravel and reported these results to Keach knowing that Keach would rely upon them. Further, the plaintiff cites negligent misrepresentation cases in its objection to the defendant's motion to dismiss and the district court's order addresses this issue. Therefore, this issue was raised below. It was also sufficiently raised in the notice of appeal, where the plaintiff framed one of the questions as: "Whether purely economic loss is recoverable in tort, in the absence of privity of contract, from a professional engineer whose negligence foreseeably caused harm to the plaintiff." Supreme Court Rule 16(3)(b) provides: "The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein." Since the plaintiff argues that negligent misrepresentation is an exception to the economic loss doctrine, we hold that this issue may be considered a subsidiary question. *See State v. Jimenez*, 137 N.H. 450, 452 (1993). Accordingly, the plaintiff's negligent misrepresentation argument is properly before us.

Negligent misrepresentation is a recognized exception to the economic loss doctrine that has been adopted by some courts. RESTATEMENT (SECOND) OF TORTS § 552, at 126-27. Where such a claim is made, a plaintiff is permitted to seek recovery for economic loss regardless of privity. *Id.*

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* § 552(1). However, a negligent misrepresentation claim in the context of the economic loss doctrine is narrower than the traditional tort claim. *Id.* § 552 comment *a* at 127 ("When the harm that is caused is only pecuniary loss, the courts have found it necessary to adopt a more restricted rule of liability, because of the extent to which misinformation

may be, and may be expected to be, circulated, and the magnitude of the losses which may follow from reliance upon it.").

We first relied upon section 552 in *Spherex*, in which we affirmed the imposition of tort liability on an accounting firm for damages suffered by the plaintiff, a third party creditor who relied upon unaudited financial statements prepared by the firm. *Spherex*, 122 N.H. 898. Focusing our analysis upon "whether the defendant has some special reason to anticipate the reliance of the plaintiff," *id.* at 903 (quotation omitted), we observed that "section 552 of the Restatement represents a reasoned approach to the issue of professional liability for negligent misrepresentation." *Id.* at 904.

In *Demetracopoulos v. Wilson*, 138 N.H. 371 (1994), another case of alleged accountant negligence, we limited the application of section 552. Quoting from *Spherex*, we reiterated that "'[the] law must not arbitrarily extend ... liability beyond the accountant's reasonable expectations as to whom the information will reach.'" *Demetracopoulos*, 138 N.H. at 375 (quoting *Spherex*, 122 N.H. at 905 (brackets omitted)). We held that the defendant accountant was not liable to the plaintiff, who had been fired after the accountant submitted a report to his employer that the plaintiff had entered into an unauthorized employment contract. *Id.* at 373, 375. Since the defendant's report "was not intended for the plaintiff's 'benefit and guidance'" and the plaintiff "did not rely or act upon the report," the plaintiff could not support a claim for negligent misrepresentation under section 552. *Id.* at 375.

■ Like *Demetracopoulos*, this case does not give rise to a claim for negligent misrepresentation. The defendant's only communication regarding the quality of the gravel was to Keach, the engineer for the town. This information was then communicated through several additional parties before reaching the plaintiff. While Keach may have relied upon the report made by the defendant, the plaintiff does not claim, nor can it, that *it* relied upon the report. Because there was no reliance by the plaintiff, the plaintiff cannot maintain a claim for negligent misrepresentation. *See* RESTATEMENT (SECOND) OF TORTS § 552; *see also Hall v. United Parcel Service*, 555 N.E.2d 273, 276 (N.Y. 1990) ("[T]he injury arose not as a result of the injured's reliance on negligently made statements but rather as a result of the direct impact that those statements had on the injured party's business and personal life.").

We will not expand the elements of negligent misrepresentation to include a scenario where reliance by *anyone* directly or indirectly involved may be imputed to the plaintiff so as to permit the plaintiff to maintain a cause of action. We have rejected claims for negligent misrepresentation

absent reliance before. *See Tober's Inc. v. Portsmouth Housing Auth.*, 116 N.H. 660, 663 (1976); *see also Bronstein v. GZA GeoEnvironmental*, 140 N.H. 253, 256-57 (1995) (finding no claim under section 552 where it was not reasonably foreseeable that plaintiffs would rely upon the prepared report). Therefore, we hold that the plaintiff has failed to establish a claim for negligent misrepresentation.

█ Because the plaintiff cannot establish a valid exception to the economic loss doctrine, the district court did not err in granting the defendant's motion to dismiss.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.