Carroll
No. 2010-624

STEPHEN C. WYLE

v.

SCOTT LEES & a.

Argued: June 16, 2011<br>Opinion Issued: September 20, 2011

*Melendy & Lee, P.A.*, of Conway (*Fay E. Melendy* on the brief and orally), for the plaintiff.

*Cooper Cargill Chant, P.A.*, of North Conway (*Christopher T. Meier* on the brief and orally), for the defendants.

DUGGAN, J. The defendants, Scott and Christina Lees, appeal a decision of the Trial Court (*Houran*, J.) finding in favor of and granting damages to the plaintiff, Stephen C. Wyle, following a bench trial on his claim for negligent misrepresentation. We affirm.

The trial court found the following facts. In 2002, the defendants purchased a two-unit apartment building located at 38 Oak Street in North Conway. The defendants lived in one unit and rented the other for income. In 2002 or 2003, the defendants sought to expand the building and Scott Lees approached a contractor to add a third, larger apartment to the back of the property. This new unit was to include a two-car garage underneath it. Lees hired the contractor to accomplish all construction work, including the necessary permitting.

In August 2003, Lees and the contractor submitted a building permit application for a "28 x 28 2 car garage with upstairs apartment with a 10 x 8 breezeway attached to existing [building]." The town informed the contractor that site plan review was necessary prior to adding a third unit and issued a permit for the garage only. Conditional approval for the site plan, which provided for six parking spaces including the two-car garage underneath the unit, was granted in November 2003 and final approval was obtained in January 2004. Both notices of approval provided that a building permit and a selectman's certificate of occupancy were required prior to any use. However, the defendants did not obtain either prior to building or occupying the unit. Additionally, because the defendants did not obtain a building permit, the town's building inspector never inspected the unit. The contractor completed construction in the spring of 2004, at which point the defendants occupied the new unit.

In the summer of 2004, the defendants approached the contractor regarding the possibility of adding more space to the new unit. The contractor recommended transforming one of the two new garage bays into a bedroom. Lees again hired the contractor both to complete construction and obtain any necessary permitting. However, the construction methods used to complete the renovation did not meet building and life safety codes. Additionally, the defendants again failed to secure the necessary building permits and the construction reduced the number of parking spaces below the minimum required by the site plan approval.

After the completion of construction, town planning and zoning board officials visited the property a number of times in 2006 and 2007. These visits related to whether there were fewer parking spaces on the property than required by the site plan approval. Nonetheless, the town returned the

defendants' bond money for the project on July 6, 2007, and informed the defendants that "[s]ave for acceptable field changes[,] the site plan requirements have been satisfied."

The defendants listed the property for sale in 2007. As part of the listing, they completed a property disclosure statement, which included the question, "Are you aware of any modifications or repairs made without the necessary permits?" The defendants answered, "No." During visits to the property prior to purchase, the plaintiff met with Lees, who assured him that he had done "everything the Town asked me to do." The plaintiff also reviewed the property tax card for the property prior to purchase.

The defendants and plaintiff executed a purchase and sale agreement on May 1, 2008. After entering into the agreement, the plaintiff had a comprehensive home inspection performed and sent a thirty-one item list of specific concerns regarding the property to the defendants. The concerns were either remedied by the defendants or waived by the plaintiff prior to closing. The defendants deeded the property to the plaintiff on July 1, 2008.

Approximately six weeks after closing, the plaintiff received a letter from the town code enforcement officer raising questions regarding the legality of the removal of a garage door from the new unit. The entire property was inspected by the town building inspector and fire chief in September 2008, which revealed numerous building and life safety code violations. As a result, the plaintiff was ordered not to occupy the unit until he corrected the violations and made the site compliant with site plan regulations. After correcting the violations, the plaintiff requested a conditional occupancy permit on October 7, 2008, which was granted on October 21.

The plaintiff then brought a single claim against the defendants for negligent misrepresentation. The plaintiff based his claim upon two alleged misrepresentations: (1) statements on the defendants' property disclosure form, which provided that all building modifications were done with the necessary permits; and (2) Lees's verbal representation that, "I did everything the town asked." The defendants filed a special plea asserting comparative negligence pursuant to RSA 507:7-d (2010), a *DeBenedetto* statement, *see DeBenedetto v. CLD Consulting Eng'rs*, 153 N.H. 793 (2006), and a motion *in limine* seeking apportionment to a number of parties, including the plaintiff. The defendants also filed a motion *in limine* seeking to preclude economic loss damages. Following a two-day bench trial, the trial court issued an order awarding damages to the plaintiff. This appeal followed.

I

The defendants first challenge the trial court's award of damages. Specifically, they argue that the economic loss doctrine precludes the

plaintiff from recovering damages. The economic loss doctrine is a "judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Plourde Sand & Gravel v. JGI Eastern*, 154 N.H. 791, 794 (2007) (quotation omitted). The doctrine "is based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic loss in the commercial arena." *Id.* (quotation omitted); *see* Barton, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 WM. & MARY L. REV. 1789, 1796-97 (2000) (explaining that while contract law presumes that contracting parties "are able to allocate risks and costs of the potential nonperformance," tort law provides a remedy where "it is impractical or impossible to negotiate either the terms of a sale or each party's duty to the other" (quotation and ellipsis omitted)).

As such, the rule precludes a harmed contracting party from recovering in tort unless he is owed an independent duty of care outside the terms of the contract. *Plourde Sand & Gravel*, 154 N.H. at 794. While the doctrine emerged with the advent of products liability, many states, including New Hampshire, have expanded its application to other tort cases. *Id.* However, it remains one of the most confusing doctrines in tort law. Barton, *supra* at 1789.

As we explained in *Plourde Sand & Gravel*, many courts have expanded the doctrine to apply even in the absence of a contract between the parties. *Plourde Sand & Gravel*, 154 N.H. at 795. However, we noted that economic loss recovery may be permitted in such a situation only where there is: (1) a "special relationship" between the plaintiff and the defendant that creates a duty owed by the defendant; or (2) a negligent misrepresentation made by a defendant who is in the business of supplying information. *Id.*

While we have recognized an exception to the economic loss doctrine for a negligent misrepresentation claim when the plaintiff and defendant are not parties to a contract, we have never addressed the issue presently before us — whether the economic loss doctrine bars recovery for such a claim between two contracting parties. Courts in various jurisdictions have struggled with this issue. *See* Barton, *supra* at 1814; *see also Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 480 n.3 (9th Cir. 1995) (noting the lack of consensus among courts that have faced the issue). The source of this struggle is the inherent tension "between negligent misrepresentation,

which allows for the recovery of pecuniary loss, and the economic loss rule, which forbids recovery of economic loss in tort." Barton, *supra* at 1814 (footnote omitted).

Many courts have distinguished those negligent misrepresentation claims that center upon an alleged inducement to enter into a contract from those that focus upon performance of the contract. *Id.* at 1815; *see Rich Products Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 977 (E.D. Wis. 1999) (explaining that a plaintiff may plead tort claims "stemming from misrepresentations which induce them to enter into a contract, so long as the representations . . . do not concern the quality or characteristics of the subject matter of the contract or otherwise relate to the offending party's expected performance"), *aff'd*, 241 F.3d 915 (7th Cir. 2001). This approach is entirely consistent with the principles behind the economic loss doctrine. Indeed, it differentiates between negligence claims based merely upon the breach of a contractual duty, the risks of which could have been allocated by the parties in their agreement, and those claims that are entirely separate and distinct from the material terms of the agreement. *See Marvin Lumber and Cedar Co. v. PPG Industries*, 223 F.3d 873, 894 (8th Cir. 2000) (Lay, J., concurring in part and dissenting in part) (collecting cases and explaining that the misrepresentations frequently barred by the doctrine "either restate the underlying defect that is the basis for the breach of contract claim or reiterate the breaching party's failure to perform under the contract"). In other words, "[w]here the misrepresentation of present fact serves as an inducement for the contract, it is not duplicitous of the breach of contract claim." *Id.* at 891.

> Where a negligence claim is based only on breach of a contractual duty, the law of contract rightly does not punish the breaching party, but limits the breaching party's liability to damages that naturally flow from the breach. It is an altogether different situation where it *appears* two parties have in good faith entered into a contract but, in actuality, one party has deliberately made material false representations of past or present fact, has intentionally failed to disclose a material past or present fact, or has negligently given false information with knowledge that the other party would act in reliance on that information in a business transaction with a third party. The breaching party in this latter situation also is a tortfeasor and may not utilize the law of contract to shield liability in tort for the party's deliberate or negligent misrepresentations.

*United Intern. Holdings v. Wharf (Holdings)*, 210 F.3d 1207, 1226-27 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001).

■ Here, the evidence at trial established that the defendants negligently misrepresented that the premises were licensed for immediate occupancy and that the defendants had obtained all necessary permits. The evidence further established that these representations induced the plaintiff to enter into the purchase and sale agreement and that he relied upon these representations when purchasing the unit. The plaintiff's allegations do not merely relate to a breached promise to perform the terms of the contract or attempt to recharacterize a breach of contract claim as a negligent misrepresentation. Such allegations would be barred by the economic loss doctrine. *See GBJ Corp. v. Eastern Ohio Paving Co.*, 139 F.3d 1080, 1088 (6th Cir. 1998) (barring the plaintiff's tort claim based upon the defendant's alleged promise to enter into a multi-part deal because the complaint "name[d] the terms of the contract as the relevant promises" and was thus "indistinguishable from the contract claim"); *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 964-65 (7th Cir. 2000) (barring plaintiff's fraud claim where parties entered into a contract for the sale of real property with an agreed upon closing date and the defendant subsequently backed out of the sale); *Kreischer v. Armijo*, 884 P.2d 827, 829 (N.M. Ct. App. 1994) (dismissing plaintiff's claim for negligent construction work because the obligation to construct the house was created by contract).

Instead, the plaintiff alleged that the defendants' misrepresentations, unrelated to any material terms of the actual purchase and sale agreement, induced him to enter into the agreement. In other words, the plaintiff's claim alleged "independent, affirmative misrepresentations unrelated" to the performance of the contract. *Marvin Lumber and Cedar Co.*, 223 F.3d at 895 (Lay, J., concurring in part and dissenting in part); *see Closed Cir. Corp. of Amer. v. Jerrold Electronics*, 426 F. Supp. 361, 364 (E.D. Pa. 1977) (distinguishing the plaintiff's fraud claim — that the defendant misrepresented that its electronic transmitter had received FCC-type approval — from his breach of contract claim). Accordingly, the trial court did not err in awarding the plaintiff economic loss damages.

■ The defendants also argue that the trial court erred by failing to address their request for apportionment of damages among all negligent parties, including the plaintiff. The defendants filed both a pre-trial *DeBenedetto* statement and motion *in limine* seeking apportionment of damages. RSA 507:7-e, I(a) (2010) provides that "if there is no jury [the court] shall find, the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties." While the trial court did not make specific factual findings regarding the negligence of any other parties, the court did not adopt the defendants' requested ruling of law that damages "must be apportioned on

a percentage basis among all negligent parties, including the plaintiff himself, the plaintiff's building inspector, and the defendant's contractor." Instead, the trial court found the defendants alone liable.

Based upon this determination and the record before it, the trial court implicitly concluded that the defendants failed to prove their allegations of comparative negligence. *See Demers Nursing Home, Inc. v. R. C. Foss & Son, Inc.*, 122 N.H. 757, 761 (1982) (noting that "in the absence of specific findings, a court is presumed to have made all findings necessary to support its decree" (quotation omitted)); *see also DeBenedetto*, 153 N.H. at 804 (explaining that a defendant "may not easily shift fault" under RSA 507:7-e and allegations of comparative negligence must be supported by "adequate evidence" before a court may consider it). Accordingly, we reject the defendants' argument that the trial court failed to address their request for apportionment of damages.

## II

■ The defendants next argue that the trial court erred in finding that the plaintiff proved the elements of a negligent misrepresentation claim, including that the defendants negligently made false representations, that the plaintiff justifiably relied upon those representations, and causation. The elements of such a claim are a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff. *Snierson v. Scruton*, 145 N.H. 73, 78 (2000). It is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them. *Id.*

The defendants essentially contend that the evidence was insufficient to support the plaintiff's claim. We review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. *Guyotte v. O'Neill*, 157 N.H. 616, 623 (2008). We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony. *Id.*

■ When viewed in the light most favorable to the plaintiff, *see id.*, the evidence was sufficient to support his claim. Although the defendants claim that they were not actually aware of any modifications or repairs accomplished without the required permits, the trial court found that both the conditional approval and final approval for the site plan stated that a building permit and a certificate of occupancy were required prior to any use. Thus, as the trial court found, the defendants knew or should have known of the falsity of their representations. *Cf. Snierson*, 145 N.H. at 78.

The record also supports the trial court's finding that the plaintiff justifiably relied on the misrepresentations. The plaintiff had a professional building inspection performed and also relied upon tax bills for the units, which showed that they were being taxed and occupied. Based upon this record, the trial court could reasonably have found that the plaintiff did not undertake further investigation because of the defendants' representations, and that such reliance was justified. *See Colby v. Granite State Realty, Inc.*, 116 N.H. 690, 691 (1976) ("A purchaser generally is justified in relying on material statements of fact concerning matters peculiarly within the seller's own knowledge."). Additionally, while the defendants claim that both the purchase and sale agreement and disclosure form warned that they did not constitute warranties, such a warning does not preclude the finder of fact from concluding that the plaintiff justifiably relied upon the written disclosures. *See Snierson*, 145 N.H. at 78. The record also supports the trial court's finding that the plaintiff proved causation, as the defendants' failure to obtain the necessary permits required the plaintiff to make the property compliant following his purchase. Accordingly, we uphold the trial court's findings.

Finally, the defendants briefly contend that a merger clause in the purchase and sale agreement shields them from liability for any oral misrepresentations. The merger clause provided that "[a]ny verbal representation, statements and agreements are not valid unless contained herein." We first note that even if we were to agree with the defendants, the merger clause at issue applies only to verbal representations and would not shield them from liability for their written misrepresentation. Moreover, the defendants devoted only one sentence of their brief to this argument, which we conclude is not sufficiently developed to warrant appellate review. *See State v. Blackmer*, 149 N.H. 47, 49 (2003). Accordingly, we express no opinion as to whether a merger clause may shield a party from liability for a negligent misrepresentation.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.