# United States Court of Appeals
## For the First Circuit

No. 18-1063

RALPH FAIELLA,

Plaintiff, Appellant,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Selya, Circuit Judges.

William Christopher Sheridan, with whom Sheridan Law Offices, was on brief, for appellant.
James W. McGarry, with whom Goodwin Procter LLP was on brief, for appellee.

June 26, 2019

**SELYA**, **Circuit Judge**. The <u>Merrill</u> doctrine requires a showing of actual authority as a basis for holding a federal instrumentality vicariously liable for the acts of its agents. <u>See</u> <u>Fed. Crop Ins. Co.</u> v. <u>Merrill</u>, 332 U.S. 380, 384 (1947). It follows that such an instrumentality cannot be held vicariously liable for acts of its agents that were not actually authorized even if a private principal could be held liable in the same or similar circumstances under a theory of apparent authority. <u>See</u> <u>id.</u> The case at hand arises against this backdrop and presents a question of first impression at the federal appellate level: does the protective carapace of the <u>Merrill</u> doctrine extend to the Federal National Mortgage Association (Fannie Mae)? Because we answer this question in the affirmative and likewise conclude that the other arguments advanced by plaintiff-appellant Ralph Faiella lack force, we affirm the district court's entry of summary judgment in Fannie Mae's favor.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case, viewing those facts in the light most flattering to the appellant (the party opposing summary judgment). <u>See</u> <u>Avery</u> v. <u>Hughes</u>, 661 F.3d 690, 691 (1st Cir. 2011). In 2007, the appellant took out a loan secured by a first mortgage on his principal residence in Plaistow, New Hampshire. The lender assigned the mortgage loan to Fannie Mae, which arranged for it to be serviced

- 2 -

by Green Tree Servicing LLC, now called Ditech Financial LLC (Ditech).

Over the next eight years, the appellant occasionally failed to make his monthly mortgage payments. On each occasion, he worked with an assigned Ditech representative to cure the default and effect late payment of the arrearage. In the summer of 2015, the appellant missed yet another payment. He thereafter received a mortgage statement indicating an arrearage of $5,428.61, which included an exhortation that he contact his assigned representative to bring his account current. After speaking with the representative, the appellant mailed Ditech a check covering both the described arrearage and his anticipated October 2015 mortgage payment. This check, in the gross amount of $6,167.21, was mailed to Ditech on September 17, 2015.

Two days later, the appellant received a notice of foreclosure on his home. He immediately wrote to his Ditech representative to confirm that he had sent a check sufficient to cure the default. In the same letter, he requested that the foreclosure be halted. The appellant heard nothing for over a week. Ditech then returned his check and notified him that the amount tendered was not correct.

The appellant promptly contacted his Ditech representative. She told him that the problem was that he had submitted a personal check, not a cashier's check. Relying on

this insight, the appellant sent Ditech a cashier's check in the same amount. His efforts proved unavailing: the foreclosure sale proceeded, and Fannie Mae acquired the mortgaged property at that sale on October 16, 2015. For its part, Ditech simply returned the cashier's check to the appellant and instructed him to contact his representative concerning the amount owed. When the appellant complied, his representative informed him that she did not know the amount needed to wipe out the foreclosure and reinstate his loan.

Notwithstanding the foreclosure, the appellant apparently retained physical possession of the premises. He went on the offensive and, in February of 2016, sued Fannie Mae and Ditech in a New Hampshire state court. The appellant's complaint prayed for a declaratory judgment regarding the invalidity of the foreclosure, asserted a wrongful foreclosure claim, and sought money damages for economic loss and emotional distress. The action was removed to the United States District Court for the District of New Hampshire. See 28 U.S.C. §§ 1332, 1441. There, the appellant filed an amended complaint seeking only a declaratory judgment with respect to the alleged invalidity of the foreclosure. On its own motion, Ditech was dropped from the case on the ground that it had not participated in the foreclosure proceeding.

In July of 2016, Fannie Mae moved to rescind its foreclosure deed and reinstate the appellant's mortgage. The

appellant opposed the motion, arguing that this unrequested equitable relief would prevent him from seeking damages. The district court denied Fannie Mae's motion and granted the appellant's oral motion to amend his complaint to reassert his damages claims.

The appellant filed a further amended complaint, replacing his previous prayer for declaratory relief with a compendium of damages claims alleging violations of several federal and state debt collection and consumer protection laws and regulations. This further amended complaint also included common-law tort claims for deceit and negligent misrepresentation.[1] Fannie Mae successfully moved to dismiss the statutory claims on various grounds. The dismissal of these claims (which is not an issue here) left only the appellant's common-law claims alleging that Fannie Mae was vicariously liable for deceit and negligent misrepresentation committed by Ditech employees.

In due season, Fannie Mae answered what remained of the further amended complaint. Its answer contained, inter alia, an affirmative defense asserting that, to the extent that the

---

[1] At the same time, the appellant sought to reintroduce Ditech as a defendant. Ditech responded by moving to strike the allegations against it as beyond the scope of the amendment that had been allowed. The court granted this motion, thus preserving Ditech's non-party status. The appellant's claims against Ditech are apparently being litigated in a state-court action and need not concern us.

appellant sought to hold Fannie Mae vicariously liable for Ditech's actions, any such liability was pretermitted by the Merrill doctrine. Alternatively, Fannie Mae asserted that the appellant's claims against it were barred by the economic-loss doctrine, a common-law principle recognized in New Hampshire. See, e.g., Wyle v. Lees, 33 A.3d 1187, 1190 (N.H. 2011); Plourde Sand & Gravel v. JGI E., Inc., 917 A.2d 1250, 1253 (N.H. 2007).

During the course of two status conferences, the parties agreed that Fannie Mae's affirmative defenses were essentially legal in nature and were potentially dispositive.[2] In line with this agreement, the court entered a bifurcated scheduling order, under which it would address the merits of Fannie Mae's Merrill doctrine and economic-loss arguments before dealing with the appellant's damages claims.

Fannie Mae moved for summary judgment on the Merrill doctrine and economic-loss issues. The appellant opposed the motion. The district court granted summary judgment on the basis of the Merrill doctrine, holding that Fannie Mae was a federal instrumentality protected from vicarious liability for the unauthorized acts of its agents. See Faiella v. Fed. Nat'l Mortg.

---

[2] This agreement was facilitated by Fannie Mae's stipulation that, for purposes of its summary judgment motion, it could be assumed that Ditech acted as its agent at all relevant times. So, too, the agreement was facilitated by the appellant's acknowledgment that no discovery was needed in order to permit him to address these issues.

Ass'n, No. 16-CV-088, 2017 WL 6375600, at *6-*8 (D.N.H. Dec. 13, 2017).  This timely appeal ensued.

## II. ANALYSIS

We review the entry of summary judgment de novo.  See Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). "A district court may only grant summary judgment when the record, construed in the light most congenial to the nonmovant, presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law."  McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017), cert. denied, 138 S. Ct. 1311 (2018); see Fed. R. Civ. P. 56(a).  When the motion is premised upon the absence of any genuine issue of material fact, the burden shifts to the nonmovant to identify, by means of materials of evidentiary quality, an issue of fact that is "more than 'merely colorable.'"  Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

### A.

The appellant mounts a threshold argument.  He says that the grant of summary judgment was improvident because the record was not sufficiently developed to permit resolution of the motion. This argument, though, cannot be reconciled with the appellant's words and actions in the court below.

At a status conference on May 23, 2017, the appellant agreed that he would review Fannie Mae's motion for summary judgment (predicated on the Merrill doctrine and economic-loss issues) and notify the court if he thought that discovery was needed to allow him to respond to the motion. During a follow-up conference on September 14, the appellant concurred in the district court's statement that "the parties are now in agreement that there's no discovery that needs to be conducted . . . to respond to the pending motion for summary judgment." By words and actions, the appellant represented to the district court that the facts were sufficiently developed to permit resolution of the summary judgment motion. A party ordinarily is bound by his representations to a court, see United States v. Orsini, 907 F.3d 115, 119-20 (1st Cir. 2018), and — having staked out his position in response to the district court's inquiry — the appellant cannot now repudiate that position.

If more were needed — and we do not think that it is — Federal Rule of Civil Procedure 56(d) provides a failsafe for this sort of situation. Under Rule 56(d), "if a party opposing summary judgment shows that 'for specified reasons, [he] cannot present facts essential to justify [his] opposition,' the district court may grant appropriate relief." Nieves-Romero v. United States, 715 F.3d 375, 381 (1st Cir. 2013) (alteration in original) (quoting Fed. R. Civ. P. 56(d)). Rule 56(d), though, is designed to help

the vigilant, not those who slumber upon perceptible rights. The rule "is not self-executing, but, rather, must be appropriately invoked." Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc., 730 F.3d 23, 28 (1st Cir. 2013). When a party confronted with a summary judgment motion does not invoke Rule 56(d) through an affidavit or some similarly authoritative proffer, he relinquishes any right to challenge the subsequent entry of summary judgment on the basis of insufficient factual development. See id. at 28-29; Jones v. Secord, 684 F.3d 1, 6 (1st Cir. 2012). So it is here.

For these reasons, we reject the appellant's threshold argument and proceed to review the district court's summary judgment ruling on the existing record.

**B.**

The pivotal question with respect to the district court's summary judgment ruling is whether Fannie Mae is a federal instrumentality for purposes of the Merrill doctrine. We turn next to that question.

In Merrill, the respondents were farmers who had applied for insurance from the Federal Crop Insurance Corporation (FCIC), a government-owned enterprise established by Congress. See 332 U.S. at 381-82. The respondents' application for crop insurance was processed by a non-federal actor, the county Agricultural Conservation Committee (the Committee), acting as an agent for the

FCIC. See id. at 382. The FCIC eventually received and approved the application. See id. But when the respondents tried to collect on the insurance during a time of drought, it came to light that the Committee, despite being informed by the respondents about certain disqualifying facts, had not included those facts in the application package that it forwarded to the FCIC. See id. Once made aware of the disqualifying information, the FCIC refused to honor the respondents' claims. See id.

The respondents sued the FCIC to make good on the policy and recover the insurance proceeds. The case wended its way to the Supreme Court, which upheld the FCIC's refusal to pay. See id. at 386. Although recovery likely could have been had against a private insurer on similar facts, the Court held that the federal government could not be bound in the same way. See id. at 383-84. The Court reasoned that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." Id. at 384. From this seed, a principle sprouted: the federal government cannot be bound by the unauthorized acts of its agents. See United States v. Ellis, 527 F.3d 203, 207 (1st Cir. 2008); United States v. Vanhorn, 20 F.3d 104, 112 n.19 (4th Cir. 1994); Penny v. Giuffrida, 897 F.2d 1543, 1546 (10th Cir. 1990); Watkins v. U.S. Army, 875 F.2d 699, 707 (9th Cir. 1989); United States v. Don B. Hart Equity Pure Tr., 818

F.2d 1246, 1256 (5th Cir. 1987); United States v. Jones & Laughlin Steel Corp., 804 F.2d 348, 352 (6th Cir. 1986); Cinciarelli v. Reagan, 729 F.2d 801, 807 (D.C. Cir. 1984); Matter of Chi., M., St. P. & P. R. Co., 673 F.2d 169, 174 (7th Cir. 1982); Doe v. Civiletti, 635 F.2d 88, 96 (2d Cir. 1980); Werner v. U.S. Dep't of Interior, 581 F.2d 168, 172 (8th Cir. 1978).[3]

The rationale that undergirds the Merrill doctrine is both salutary and straightforward. The doctrine "expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." Merrill, 332 U.S. at 385. "Because the federal government's 'fiscal operations are so various, and its agencies so numerous and scattered,' there is always a risk that misinformed . . . representatives may err in interpreting statutes and regulations, and even 'the utmost vigilance would not save the public from the most serious losses.'" Wagner v. Dir., Fed. Emerg. Mgmt. Agency, 847 F.2d 515, 519 (9th Cir. 1988) (quoting United States v. Kirkpatrick, 22 U.S. (9

---

[3] In this circuit, the Merrill doctrine has been applied primarily when a party asserts that the federal government should be equitably estopped from raising the defense that the acts of its agents were unauthorized. See, e.g., Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 66 (1st Cir. 1999); Phelps v. Fed. Emerg. Mgmt. Agency, 785 F.2d 13, 17 (1st Cir. 1986). It is abundantly clear, however, that the principle that the federal government cannot be held liable for its agents' unauthorized acts is not limited to cases arising in such a posture.

- 11 -

Wheat.) 720, 735 (1824)).  Thus, the Merrill doctrine is designed, in part, to ensure appropriate protection of the public fisc.

We say "in part" because the doctrine also rests solidly "upon considerations of sovereign immunity and constitutional grounds — the potential for interference with the separation of governmental powers between the legislative and executive." Phelps v. Fed. Emerg. Mgmt. Agency, 785 F.2d 13, 17 (1st Cir. 1986).  These foundational considerations are reinforced by public policy considerations.  See Mendrala v. Crown Mortg. Co., 955 F.2d 1132, 1140 (7th Cir. 1992).  All of these concerns come into especially bold relief where, as here, unauthorized acts by a private contractor could potentially bind the federal government. See id. at 1141.

Of course, the Merrill doctrine — by its very nature — operates only to safeguard federal instrumentalities. Consequently, it remains for us to determine whether Fannie Mae is a federal instrumentality for purposes of the Merrill doctrine — a task that no other federal appellate court has yet undertaken. Cf. Molton, Allen & Williams, Inc. v. Harris, 613 F.2d 1176, 1179 (D.C. Cir. 1980) (assuming but not holding that Merrill doctrine applies to Fannie Mae).

We preface this inquiry by noting that the appellant has not fully developed an argument that Fannie Mae is not a federal instrumentality under the Merrill doctrine.  Nevertheless, his

muddled briefing does suggest that because Fannie Mae is not a federal instrumentality for the purposes of sovereign immunity or the Federal Tort Claims Act, that status is precluded in the Merrill context. So, too, he argues that as a shareholder-owned corporation, Fannie Mae should not receive the protections of the Merrill doctrine. These suggestions need not detain us.

First, the fact that an entity is deemed not to be a federal instrumentality for a particular purpose does not signify that the entity should not be deemed to be a federal instrumentality for some other purpose. See U.S. ex rel. Adams v. Aurora Loan Servs., Inc., 813 F.3d 1259, 1261 (9th Cir. 2016); cf. Mendrala, 955 F.2d at 1139 (noting that even if the Federal Home Loan Mortgage Corporation is not a federal instrumentality within the purview of the Federal Tort Claims Act, that "does not preclude a determination that it is a federal instrumentality for other purposes"). Second, the question of instrumentality status is not determined either by Fannie Mae's corporate form or by whether Fannie Mae serves a "proprietary" (as opposed to a "sovereign") function. See Merrill, 332 U.S. at 384 (explaining that "[t]he Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends"); see also REW Enters., Inc. v. Premier Bank, N.A., 49 F.3d 163, 167 (5th Cir. 1995) (warning against undue reliance on labels). We agree with the Eleventh Circuit that a

"federal instrumentality does not divest itself of the privileges of instrumentality status when it acts more like a privately owned institution than a federal agency."  Smith v. Russellville Prod. Credit Ass'n, 777 F.2d 1544, 1550 (11th Cir. 1985).

With these muddled arguments laid to rest, our inquiry hinges on whether Congress created Fannie Mae to serve an important governmental objective.  See REW Enters., 49 F.3d at 167-68.  In making this determination, we look primarily to congressional intent as embodied in Fannie Mae's governing statute.  See McCauley v. Thygerson, 732 F.2d 978, 982 (D.C. Cir. 1984).  We also take into account whether preventing Fannie Mae from being bound by the unauthorized acts of its agents would run at cross-purposes with this intent.  See Mendrala, 955 F.2d at 1140-41; McCauley, 732 F.2d at 982.

Although the question before us is a question of first impression at the federal appellate level, the road is well-marked. The Seventh Circuit's decision in Mendrala is particularly instructive.  There, the court concluded that the Federal Home Loan Mortgage Corporation (Freddie Mac) is a federal instrumentality for purposes of the Merrill doctrine.  See 955 F.2d at 1140.  Looking to its governing statute, the court found that Freddie Mac "has a public statutory mission:  to maintain the secondary mortgage market and assist in meeting low- and moderate-income housing goals."  Id. at 1140-41 (citing Pub. L. No. 91-351,

- 14 -

§ 301, as amended, Pub. L. No. 101-73, Title VII, § 731(a), 103 Stat. 429 (Aug. 9, 1989)). This mission, the court stated, would be thwarted if Freddie Mac could be held "responsible for the unauthorized actions" of its agents. Id. at 1141. That the agents in question were employees of a private entity with whom Freddie Mac contracted, the court explained, presented an even stronger case for applying the Merrill doctrine. See id.

Freddie Mac and Fannie Mae are siblings under the skin. Cf. Jacobs v. Fed. Hous. Fin. Agency, 908 F.3d 884, 887 (3d Cir. 2018) ("In the wake of the Great Depression, Congress created Fannie, and later Freddie, to support the home-mortgage market."). Like Freddie Mac, Fannie Mae is a shareholder-owned company, which operates under a congressional charter. See id.; 2 U.S.C. § 622(8). And like Freddie Mac, Fannie Mae serves an important governmental objective: "to maintain the secondary mortgage market and assist in meeting low- and moderate-income housing goals." Mendrala, 955 F.2d at 1140. Enabling Fannie Mae to be held liable for the unauthorized acts of its agents, particularly those who are employees of a private entity, would frustrate Congress's intent as expressed in the prescribed nature of Fannie Mae's authority. Cf. id. at 1141 (reaching similar conclusion with respect to Freddie Mac).

That ends this aspect of the matter. We hold that Fannie Mae is a federal instrumentality for purposes of the Merrill

- 15 -

doctrine and, thus, cannot be held liable for the unauthorized acts of its agents.[4]  Since the appellant's claims are predicated on the theory that Fannie Mae should be held to account for the acts of Ditech employees — acts that the record does not show were actually authorized by Fannie Mae — the district court's entry of summary judgment seems unimpugnable.

## C.

The appellant tries to make an end run around this holding.  He contends that language in Fannie Mae's governing statute allowing it "to sue and be sued," 17 U.S.C. § 1723a(a), precludes application of the Merrill doctrine.

This contention is wrong on its face.  The dispositive question is not whether a federal instrumentality can sue and be sued as a general matter but, rather, whether the federal instrumentality can be sued for the unauthorized acts of its agents.  Cf. Edwards v. Tenn. Valley Auth., 255 F.3d 318, 322-25 (6th Cir. 2001) (concluding that agency action fell within exception to tort liability under its "sue and be sued" provision). As we already have explained, Fannie Mae cannot.

---

[4] This holding echoes a chorus of decisions by district courts. See, e.g., Gray v. Seterus, Inc., 233 F. Supp. 3d 865, 869 (D. Or. 2017); Cannon v. Wells Fargo Bank N.A., 917 F. Supp. 2d 1025, 1035 (N.D. Cal. 2013); Hinton v. Fed. Nat. Mortg. Ass'n, 945 F. Supp. 1052, 1060 (S.D. Tex. 1996), aff'd, 137 F.3d 1350 (5th Cir. 1998).

To cinch the matter, the statute governing the FCIC (the federal instrumentality involved in Merrill) contains precisely the same "sue and be sued" language upon which the appellant mistakenly relies. See 7 U.S.C. § 1506(d). What is sauce for the Merrill goose is perforce sauce for the appellant's gander.

To say more on this point would be supererogatory. There is simply no hint of tension between the operation of Fannie Mae's "sue and be sued" provision and our holding that Fannie Mae is a federal instrumentality for purposes of the Merrill doctrine.

## D.

Caught in the toils of the Merrill doctrine, the appellant spies what he perceives as an escape route. Even if the Merrill doctrine applies generally to Fannie Mae, his thesis runs, the doctrine is limited to contract claims and, therefore, does not defenestrate his tort-based claims. This route is a dead end.

The appellant does not offer a shred of authority supporting his self-serving attempt to truncate the reach of the Merrill doctrine. The case law, though sparse, makes pellucid that the Merrill doctrine has regularly been applied to foreclose claims sounding in tort. See, e.g., Gray v. Seterus, Inc., 233 F. Supp. 3d 865, 869 (D. Or. 2017) (collecting cases "which have found that the Merrill doctrine applies in both contract and statutory tort based claims"); Cannon v. Wells Fargo Bank N.A., 917 F. Supp. 2d 1025, 1034 (N.D. Cal. 2013) (explaining that "the Merrill

doctrine has been applied to both contract and tort-based claims"). Nor is there any discernable justification for adopting a categorical rule that would sideline the Merrill doctrine in actions sounding in tort. After all, the public fisc is at risk regardless of the form of action; and the same separation of powers, sovereign immunity, and public policy concerns that drive the Merrill doctrine in the contract context are equally implicated in the tort context.

The claims that the appellant presses in the case at hand illustrate the fallacy of attempting to draw a blanket distinction between contract and tort claims with respect to the Merrill doctrine. Even though his claims sound in tort, they are inextricably tied to duties derived from the appellant's contractual relationship with Fannie Mae. Specifically, the appellant's claims are based on representations allegedly made by Ditech personnel during the term of the mortgage and in relation to the mortgage. Seen in this light, construing the Merrill doctrine to preclude contract claims while allowing parallel contract-based tort claims would be both incongruous and mischievous — an open invitation to gamesmanship. We hold, therefore, that even though the appellant's claims sound in tort, the Merrill doctrine bars his suit.

**E.**

The appellant has one last shot in his sling.  Even assuming that the Merrill doctrine shields Fannie Mae from vicarious liability for the unauthorized acts of its agents, see text supra, the appellant notes that the doctrine has inherent limitations.  One prominent limitation is that the doctrine does not bar suits against a federal instrumentality when an agent of that instrumentality acts with "[a]ctual authority . . . conferred either expressly or by necessary implication."  United States v. Flemmi, 225 F.3d 78, 85 (1st Cir. 2000).

With this toehold, the appellant labors to rewrite the Merrill doctrine.  He maintains that "regardless of authority," the government must be held responsible for the torts of its agents.  This is simply too much of a stretch:  while an agent ordinarily may bind a principal when he acts on the basis of his apparent authority, see Restatement (Second) of Agency § 8 (1958), apparent authority is "not available to bind the federal sovereign," Flemmi, 225 F.3d at 85.  It follows that the federal government can be held vicariously liable only when it has granted actual authority to its allegedly culpable agents.  See id. Here, the record is devoid of anything that might suggest that Ditech personnel were granted actual authority by Fannie Mae to make the allegedly inaccurate representations that the appellant attributes to them.

- 19 -

There is, of course, another potentially pertinent limitation: the federal government cannot claim the prophylaxis of the <u>Merrill</u> doctrine in the face of its own affirmative misconduct. <u>See</u> <u>REW Enters.</u>, 49 F.3d at 169. "There is no single test for detecting the presence of affirmative misconduct; each case must be decided on its own particular facts and circumstances." <u>Watkins</u>, 875 F.2d at 707. The caselaw suggests, however, that a finding of affirmative misconduct requires either an affirmative misrepresentation of a material fact by the government or some affirmative concealment of such a fact by the government. <u>See</u> <u>id.</u> And in any event, affirmative misconduct "requires something more than simple negligence" on the part of the federal instrumentality. <u>Dantran Inc.</u> v. <u>U.S. Dep't of Labor</u>, 171 F.3d 58, 67 (1st Cir. 1999).

In this case, Fannie Mae has asserted the absence of any genuine issue of material fact with respect to affirmative misconduct. Thus, the appellant, as the party opposing summary judgment, had the burden of establishing, through materials of evidentiary quality, facts sufficient to support a showing of affirmative misconduct. <u>See</u> <u>Flovac</u>, 817 F.3d at 853. But the district court found "no evidence in the record that Fannie Mae authorized or affirmatively encouraged Ditech to improperly service" the appellant's loan. <u>Faiella</u>, 2017 WL 6375600, at *7. Relatedly, the court found nothing in the record "that would

support an inference that Ditech's alleged misrepresentations were the result of affirmative misconduct as opposed to carelessness" on Fannie Mae's part. Id.

Before us, the appellant does not challenge these findings.[5] The absence of such a challenge means that the appellant has waived any right to assert that Fannie Mae committed affirmative misconduct. See DeCaro v. Hasbro, Inc., 580 F.3d 55, 64 (1st Cir. 2009) ("It is common ground that contentions not advanced in an appellant's opening brief are deemed waived."); Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990) (similar).

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed.**

---

[5] To be sure, the appellant reiterates his argument that further discovery should be allowed as to the existence vel non of affirmative misconduct. We already have explained why he is not entitled to further discovery, see supra Part II(A), and beating this dead horse would serve no useful purpose.