NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2019-0548

MENTIS SCIENCES, INC.

v.

PITTSBURGH NETWORKS, LLC

Argued: June 24, 2020
Opinion Issued: September 22, 2020

Shaheen Guerrera & O'Leary, LLC, of North Andover, Massachusetts (Peter G. Shaheen on the brief and orally), for the plaintiff.

Peabody & Arnold LLP, of Boston, Massachusetts (Robert A. McCall and John J. O'Connor on the brief, and Mr. O'Connor orally), for the defendant.

DONOVAN, J. The plaintiff, Mentis Sciences, Inc., appeals an order of the Superior Court (McNamara, J.) dismissing its claims for damages representing the cost of recreating lost data and lost business and negligence against the defendant, Pittsburgh Networks, LLC. The plaintiff argues that the trial court erred by: (1) concluding that the damages representing the cost of recreating lost data and lost business were consequential; (2) concluding that the limitation of liability clause in the parties' contract is enforceable; and (3) dismissing its claim for negligence. We affirm because the damages sought by the plaintiff are consequential and the limitation of liability clause precludes the plaintiff from recovering consequential damages. We also conclude that the economic loss doctrine bars the plaintiff's negligence claim.

## I. Facts

We assume the following facts, as alleged in the plaintiff's complaint, to be true. The plaintiff is an engineering firm that, among other things, designs, develops, and tests advanced composite materials for United States Department of Defense customers. Since entering this sector in 1996, the plaintiff has acquired "a vast amount of valuable data that was utilized in its operations."

In 2010, the defendant began providing the plaintiff with technological support or "IT" services. In 2014, the parties executed a "Service Agreement" in which the defendant agreed to provide the plaintiff with services including "monitoring of computers and network, data backup, network services, antivirus, and comprehensive maintenance and support for servers, PC's and the network," and the plaintiff agreed to pay the defendant an annual fee of $15,864. The parties' contract included the following limitation of liability clause: "The Service Provider shall not be liable for any indirect, special, incidental, punitive or consequential damages, including but not limited to loss of data, business interruption, or loss of profits, arising out of the work performed . . . by the Service Provider."

In August 2014, the defendant notified the plaintiff that a drive in one of its servers had failed and would need to be replaced. The defendant thereafter provided the plaintiff a summary of the problem: a "Redundant Array of Independent Disks" controller malfunctioned, causing the corruption of some of the plaintiff's data. The defendant attempted to recover the corrupted data; however, the data was permanently lost because the defendant had failed to properly back it up.

The plaintiff initiated an action against the defendant, alleging breach of contract and negligence. In its complaint, the plaintiff alleged that the lost data "represents valuable intellectual property compiled over many years and is of daily critical use in [the plaintiff's] business." The plaintiff further alleged that, as a result of the data loss, it was required to conduct "massively expensive" testing in order to recreate the data and that, without the lost data, it was "unable to bid or participate in various projects worth potentially millions of dollars." The plaintiff posited that its "actual damages," which included the cost of recreating the data and lost business, were "estimated to be in the millions of dollars." The defendant moved to dismiss the plaintiff's complaint, arguing that the contract's limitation of liability clause barred the damages sought by the plaintiff because they were consequential. It also argued that the plaintiff's negligence theory was unavailable under New Hampshire law.

The trial court, finding the limitation of liability clause enforceable, concluded that the damages sought by the plaintiff were consequential and

therefore unrecoverable because of the limitation of liability provision. According to the trial court, the plaintiff could only recover "what [it] expected to receive, the fair market value of [the defendant]'s services, which is probably close to . . . the contract price." The trial court also concluded that the plaintiff's negligence claim was precluded by the economic loss doctrine. Accordingly, the trial court dismissed the plaintiff's damages claims for the cost of recreating the lost data and lost business and its negligence claim. Thereafter, in a ruling that is not the subject of this appeal, the trial court awarded the plaintiff $40,000 in direct damages. This appeal followed.

## II. Standard of Review

In reviewing a trial court's order on a motion to dismiss, we assume the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiff. Gen. Insulation Co. v. Eckman Constr., 159 N.H. 601, 611 (2010). We need not, however, assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law. Id. Where, as here, the plaintiff attaches a copy of the contract to the complaint, we may consider the terms of the contract in reviewing the ruling on the motion to dismiss. See Beane v. Dana S. Beane & Co., 160 N.H. 708, 711 (2010). A motion to dismiss should be granted if the plaintiff's allegations are not reasonably susceptible of a construction that would permit recovery. See id. In making this inquiry, we look at the facts alleged in the complaint and the applicable law and determine whether the allegations provide a basis for legal relief. See Eckman Constr., 159 N.H. at 611. If they do not, the trial court properly granted the motion to dismiss. See id.

## III. Analysis

### A. Recreation of Data and Lost Business Damages

We first address the plaintiff's argument that its complaint seeks only "direct damages, and not consequential or incidental damages." In particular, the plaintiff's complaint claims damages for "man hours spent trying to recreate some of the data" and for its loss of business "because it could not bid on certain governmental contracts without the data to support its proposals."

The goal of money damages for a breach of contract is to place "the injured party 'in as good a position as [it] would have been in had the contract been performed.'" Riblet Tramway Co. v. Stickney, 129 N.H. 140, 149 (1987) (quoting Restatement (Second) of Contracts § 347 cmt. a at 112 (1979)); see Hawkins v. McGee, 84 N.H. 114, 117 (1929). This principle describes the damages necessary to fulfill an injured party's expectation interest. See Restatement (Second) of Contracts § 347(a)-(c) & cmt. a at 112 (1981). In arguing that the damages it seeks are direct rather than consequential, the plaintiff incorrectly equates its expectation interest with the measure of direct

damages. A party's expectation interest is comprised, in part, of "the loss in the value to him of the other party's performance caused by its failure or deficiency," in addition to "any other loss, including incidental or consequential loss, caused by the breach." Restatement (Second) of Contracts, supra § 347(a)-(b), at 112. Thus, according to the principles we explain further below, a party's expectation interest may be fulfilled by an award of both direct and consequential damages. See 11 Joseph M. Perillo, Corbin on Contracts § 55.3, at 10 (rev. ed. 2005) ("Placing a party in the same economic position as performance would have sometimes requires a grant of general [or direct] damages coupled with consequential damages.").

The line dividing what may be considered direct versus consequential damages "is not capable of exact determination." Id. § 56.6, at 105. However, we find the following principles instrumental when divining the difference. Direct damages "are based on the value of the performance itself," whereas consequential damages are based "on the value of some consequence that performance may produce." Dan B. Dobbs & Caprice L. Roberts, Law of Remedies: Damages — Equity — Restitution § 12.4, at 811 (3d ed. 2018); see Restatement (Second) of Contracts, supra § 347(a)-(b), at 112; see also Schonfeld v. Hilliard, 218 F.3d 164, 176 (2d Cir. 2000) (describing consequential damages as those that "seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach"). Thus, consequential damages "are not based on the capital or present value of the promised performance but upon benefits it can produce or losses that may be caused by its absence." Dobbs & Roberts, supra § 12.2, at 804; see Restatement (Second) of Contracts, supra § 347 cmt. c at 114 ("Consequential losses include such items as injury to person or property resulting from defective performance."); see also KC Properties v. Lowell Inv. Partners, 280 S.W.3d 1, 10 (Ark. 2008) (describing consequential damages as those that flow "from some of the consequences or results of the breach").

Applying these principles to the plaintiff's claim for damages representing the cost of recreating the data and lost business, we conclude that such damages are consequential. Pursuant to the parties' contract, the defendant agreed to provide services to maintain and manage the plaintiff's network infrastructure. Even if we assume, as the plaintiff asserts, that the defendant explicitly agreed to provide data protection or backup services, we would conclude that the damages the plaintiff seeks are consequential. The cost of recreating the lost data does not represent the value of the performance of maintaining and managing the plaintiff's network or data. Rather, this cost represents an amount necessary to repair a loss that was caused by the absence of the performance of those services, and, accordingly, is consequential in nature.

4

Similarly, the business and profits that the plaintiff lost because it cannot use the data to bid on projects do not represent the value of the defendant's performance. Lost profit damages may be direct or consequential, depending upon the circumstances. See Atlantech Inc. v. American Panel Corp., 743 F.3d 287, 293 (1st Cir. 2014) (discussing when lost profit damages may be considered direct or consequential); see also Kerr S.S. Co. v. Radio Corporation of America, 157 N.E. 140, 141 (N.Y. 1927) ("[D]amage which is general [or direct] in relation to a contract of one kind may be classified as special [or consequential] in relation to another."). Here, the claimed lost profit damages are not direct because the profits lost were not inherent in the contract; that is, the plaintiff did not stand to earn these profits as a direct result of its contract with the defendant. See Penncro Associates, Inc. v. Sprint Spectrum, L.P., 499 F.3d 1151, 1156 (10th Cir. 2007) (explaining that one situation in which lost profit damages are considered direct is "if a services contract is breached and the plaintiff anticipated a profit under the contract"); see also Atlantech, 743 F.3d at 293 (providing as an example of lost profits that are direct damages "a general contractor su[ing] for its remaining contract price less saved expenses"). Rather, what the plaintiff gained from the contract was the defendant's services. The plaintiff's profits were anticipated as a result of its bidding and participating in other "projects," which relied upon actions and contingencies that would have taken place outside of its contract with the defendant. Accordingly, the lost profit damages the plaintiff seeks are consequential. See Atlantech, 743 F.3d at 293 (determining that the lost profit damages sought by the plaintiff were consequential because "they depend on contingencies beyond the terms of the contract itself"); Penncro, 499 F.3d at 1156 (explaining that lost profits damages are considered consequential if the breach precluded the plaintiff "from performing other work . . . from which it expected to make a profit").

The cases relied upon by the plaintiff provide no support for its argument that the damages it seeks are direct rather than consequential. In those cases, the courts did not have the occasion to consider the difference between direct and consequential damages. See, e.g., In re: Yahoo! Inc. Customer Data Security Breach Litigation, 16-MD-02752-LHK, 2017 WL 3727318, at *46 (N.D. Cal. Aug. 30, 2017) (finding that a limitation of liability clause did not bar direct damages in data breach litigation, but refusing to consider which of the plaintiff's claimed damages were direct as opposed to consequential because the issue was not properly presented by the parties); In re Anthem, Inc. Data Breach Litigation, 162 F. Supp. 3d 953, 982-83 (N.D. Cal. 2016) (dismissing a breach of contract claim because the plaintiffs failed to specify in their complaint which contractual provisions were breached); Marchesseault v. Jackson, 611 A.2d 95, 98-99 (Me. 1992) (affirming the trial court's award of damages for breach of a construction contract where the distinction between direct and consequential damages was not at issue).

5

For the same reason, Emery v. Caldeonia Sand & Gravel Co., 117 N.H. 441 (1977), is unavailing to the plaintiff.  There, plaintiff farm operators brought a breach of contract action against a construction company after the company failed to restore the plaintiffs' farmland according to their contract's specifications.  Id. at 444.  The trial court awarded the plaintiffs damages in the amount necessary to restore the land.  Id. at 445.  We affirmed the award of damages, explaining that "[a] valuable income-producing asset has been rendered unproductive; the damages awarded constitute a reasonable means of bringing that asset back to life."  Id. at 448.  In reaching this conclusion, we applied the principle that "the goal of compensation" in a contract case is "the awarding of a sum which is the equivalent of performance of the bargain [by which the court] attempt[s] to place the plaintiff in the position he would be in if the contract had been fulfilled."  Id. at 447 (quotation omitted).  This principle describes a plaintiff's expectation interest, which, as we explained above, can include both direct and consequential damages.  See Restatement (Second) of Contracts, supra § 347(a)-(b), at 112.  We further observed that the parties' written agreements included no damage limitation provision and, thus, we had no occasion to distinguish direct from consequential damages.  Emery, 117 N.H. at 446.  Accordingly, the case has no bearing on the difference between these categories of damages.

### B. Enforceability of the Limitation of Liability Provision

We next turn to the plaintiff's argument that the limitation of liability provision in the parties' contract is unenforceable because it prevents the plaintiff from obtaining a "minimum adequate remedy" and is thus contrary to public policy.  The provision provides that the defendant is not liable for "any indirect, special, incidental, punitive or consequential damages."

Parties to a contract are generally bound by the terms of an agreement freely and openly entered into.  Rizzo v. Allstate Ins. Co., 170 N.H. 708, 713 (2018).  Courts cannot improve the terms or conditions of an agreement that the parties themselves have executed or rewrite contracts merely because they might operate harshly or inequitably.  See id.  However, we will not enforce a contract or contract term that contravenes public policy.  Id.  We have explained that an agreement is against public policy "if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or, . . . is at war with the interests of society and is in conflict with the morals of the time."  Id. (quotation omitted).

The plaintiff does not argue that the limitation of liability provision violates public policy based upon any of the interests we identified in Rizzo.  Rather, as support for its assertion that the provision here violates public policy, the plaintiff relies upon Orthopaedic Center of South Florida, P.A. v. Stryker Corporation, 08-60742-CIV-DIMITROULEAS, 2008 WL 11331981 (S.D.

6

Fla. Sept. 16, 2008).  There, the United States District Court for the Southern District of Florida, applying Florida law, concluded that a limitation of liability clause that precluded recovery of "direct, special, incidental or consequential damages resulting from any breach of warranty or condition, or under any other legal theory," was unenforceable.  Id. at *3.  The court reasoned that a reasonable person would not understand that the clause "contract[s] away any meaningful remedy" for a breach and enforcing the clause "would allow the Defendants to breach provisions of the contract through its own negligent behavior, with impunity, thereby rendering specific provisions of the contract meaningless."  Id.

Here, on the other hand, the limitation of liability clause does not extend to "direct" damages or preclude recovery for "damages resulting from any breach of warranty or condition, or under any legal theory."  Cf. id.  Rather, the clause specifically states that the defendant is not liable for "indirect, special, incidental, punitive or consequential damages, including but not limited to loss of data, business interruption, or loss of profits."  Thus, the limitation of liability provision at issue in Stryker was significantly broader than the provision set forth in the parties' contract in this case.  This difference renders Stryker inapposite.  The defendant here could not "breach provisions of the contract . . . with impunity," id., but remained liable for direct damages stemming from any breach, and the plaintiff recovered $40,000 in direct damages.  Furthermore, given the specificity of the clause, a reasonable person would have known what they were contracting away, cf. id.; nonetheless, the plaintiff chose to enter into the contract.

The plaintiff also relies upon RSA 382-A:2-719 (2011), a provision of the New Hampshire Uniform Commercial Code (UCC), in support of its argument that a contract provision precluding recovery of a "minimum adequate remedy" is unenforceable.  We find this argument unavailing.  First, the UCC generally applies only to contracts for the sale of goods.  In re Trailer and Plumbing Supplies, 133 N.H. 432, 435 (1990).  The language of the parties' contract demonstrates that it is a services contract, and, accordingly, the UCC does not apply.  See id. at 438 ("Because the agreement is a contract for services, the UCC does not govern this dispute.").  Second, RSA 382-A:2-719 does not use the phrase "minimum adequate remedy," but states that, in a contract for the sale of goods, consequential damages "may be limited or excluded unless the limitation or exclusion is unconscionable."  RSA 382-A:2-719(3).  "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  Rizzo, 170 N.H. at 717 (quotation omitted).  Here, even if we were to consider the principles of law embodied in the UCC in our analysis, the plaintiff makes no argument that it lacked a meaningful choice or was in an unequal bargaining position with the defendant.  See id.  Accordingly, we are not persuaded by the plaintiff's arguments that the limitation of liability provision is unenforceable.

7

In sum, we conclude that the damages representing the cost of recreating the data and lost profits are consequential. Because we also conclude that the limitation of liability clause, which precludes recovery of consequential damages, is enforceable, the plaintiff is unable to recover those damages.

## C. Negligence Claim

Finally, we address the plaintiff's argument that the economic loss doctrine does not bar its negligence claim. The economic loss doctrine is a "judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." Plourde Sand & Gravel v. JGI Eastern, 154 N.H. 791, 794 (2007) (quotation omitted). The doctrine recognizes that contract and warranty law are better suited than tort law for "dealing with purely economic loss in the commercial arena." Id. (quotation omitted). Allowing a contracting party to sue in tort "when a transaction does not work out as expected" in effect allows that party to "rewrit[e] the agreement to obtain a benefit that was not part of the bargain." Id. (quotation omitted). Accordingly, the doctrine "precludes a harmed contracting party from recovering in tort unless he is owed an independent duty of care outside the terms of the contract." Wyle v. Lees, 162 N.H. 406, 410 (2011).

In Wyle, we determined that the economic loss doctrine did not bar the plaintiff's negligent misrepresentation claim because the misrepresentations induced the plaintiff to enter into a contract. Id. at 411-12. The plaintiff argues that the defendant "negligently misrepresented to [the plaintiff] that it was routinely backing up [the plaintiff's] data." However, in Wyle we endorsed a distinction between negligent misrepresentation claims "that center upon an alleged inducement to enter into a contract from those that focus upon performance of the contract." Id. at 411. When a negligence claim is "based merely upon the breach of a contractual duty," the claim will not lie. Id. On the other hand, when "the misrepresentation of present fact serves as an inducement for the contract," the negligence claim is not duplicative of the breach of contract claim. Id. (quotation omitted).

Here, the plaintiff's complaint does not allege that the defendant negligently misrepresented facts in order to induce the plaintiff to enter into the contract. Cf. id. at 412 (concluding that a negligent misrepresentation claim was unrelated to any material terms of the contract because the claim was based upon the defendants' negligent misrepresentation of facts which induced the plaintiff to enter into a purchase and sale agreement). Rather, the complaint states that the defendant "was negligent in failing to exercise a reasonable standard of care in performing its work by . . . failing to confirm that [the plaintiff's] data was being backed up." This claim "merely relate[s] to a breached promise to perform the terms of the contract" because any duty to

8

back up the plaintiff's data, and thus confirm that such performance was being rendered, was created by the terms of the contract. Id. Accordingly, the negligence claim is indistinguishable from a claim that the defendant failed to perform under the contract and, as such, is "barred by the economic loss doctrine." Id.; see Catalan v. GMAC Mortg. Corp., 629 F.3d 676, 693 (7th Cir. 2011) (concluding that the economic loss doctrine barred plaintiffs' negligence claim because the duties claimed by the plaintiffs were rooted in the contract itself).

## IV. Conclusion

For the reasons stated above, we affirm the trial court's dismissal of the plaintiff's damages claims representing the cost of recreating its lost data and lost business and its negligence claim.

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.